IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit Corporation,
ANITA HANSEN,
ROBERT SIROWITZ,
JOSHUA STAPEN, and
ROBIN STEPHENS,

       Plaintiffs,

v.

ABERCROMBIE & FITCH CO.,
ABERCROMBIE & FITCH STORES, INC, and
J.M. HOLLISTER LLC, d/b/a HOLLISTER CO.

       Defendants.

---

## COMPLAINT

---

       Plaintiffs, Colorado Cross-Disability Coalition, Anita Hansen, Robert Sirowitz, Joshua Stapen, and Robin Stephens, by and through their attorneys, Kevin W. Williams and Carrie Ann Lucas of the Colorado Cross-Disability Coalition Legal Program, hereby submit this Complaint for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the Colorado Civil Rights Act ("CCRA"), Colo. Rev. Stat. § 24-34-601 *et seq.*

### INTRODUCTION

       1.     Almost twenty years after the passage of the ADA, Abercrombie & Fitch Co., Abercrombie & Fitch Stores, Inc, J.M. Hollister LLC, d/b/a Hollister Co. ("Defendants"), all related companies and expanding clothing retailers with stores throughout the United States and

beyond, discriminate against individuals who use wheelchairs for mobility.  Defendants design, construct and operate stores that provide separate, segregated and unequal access and services to customers who use wheelchairs.

2.      The federal ADA was enacted in 1990, "[t]o establish a clear and comprehensive prohibition of discrimination on the basis of disability."  The ADA prohibits public accommodations, like the stores Defendants own and operate, from providing individuals who use wheelchairs with separate or unequal benefits and services.

3.      Colorado's state law equivalent, the CCRA, has prohibited discrimination on the basis of disability since before the enactment of the ADA and also requires that individuals who use wheelchairs for mobility be provided with the "full and equal enjoyment" of Defendants' goods, services, facilities, privileges and accommodations.

4.      According to Abercrombie & Fitch Co.'s March 2009 form 10-K submitted to the federal Securities and Exchange Commission and available on its website:

> The Company's in-store marketing is designed to convey the principal elements and personality of each brand.  The store design, furniture, fixtures and music are carefully planned and coordinated to create a shopping experience that reflects the Abercrombie & Fitch, abercrombie . . . [or] Hollister . . . lifestyle. . . .

> Every brand displays merchandise uniformly to ensure a consistent store experience, regardless of location.  Store managers receive detailed plans designating fixture and merchandise placement to ensure coordinated execution of the Company-wide merchandising strategy.

5.      That "store experience" and "lifestyle" exclude people who use wheelchairs. Defendants' "coordinated" store layouts are not accessible to individuals who use wheelchairs.

6.     Defendants created and designed all Hollister Co. stores, one of Defendants' store brands, after the passage of and the effective date of the ADA.  In newly designed and constructed stores or those that have been altered after the passage of the ADA, such stores must be "readily accessible to and usable by" individuals who use wheelchairs.  Hollister Co. Stores in Colorado are not accessible to individuals who use wheelchairs.

7.     Defendants also operate Abercrombie & Fitch stores and abercrombie stores in Colorado.  These stores also are not accessible to individuals who use wheelchairs.

8.     Despite the ADA's and the CCRA's long existence, Defendants have designed, constructed and maintain Hollister Co. stores, Abercrombie & Fitch and abercrombie stores in Colorado that deny individuals who use wheelchairs full and equal access to their stores.

9.     Defendants discriminate against customers who use wheelchairs in ways that include, without limitation, the following:

a.     Designing and constructing stairs at Hollister Co. stores' main entrances and forcing individuals who use wheelchairs to enter at a different, separate and segregated location;

b.     locking doors that are supposed to be accessible to individuals who use wheelchairs;

c.     designing and constructing service counters that are too high for individuals in wheelchairs to use; and

d.     arranging merchandise displays, furniture, plants, etc. in their stores that block access to customers who use wheelchairs throughout the store.

10.    Robert Sirowitz, Anita Hansen, Robin Stephens, and Joshua Stapen ("Individual

Plaintiffs"), all use wheelchairs, and Colorado Cross-Disability Coalition ("CCDC") is a

disability rights advocacy organization.  Each Individual Plaintiff is a member of CCDC.  CCDC

and plaintiffs have been damaged by Defendants' discrimination and seek a court order directing

Defendants to comply with the ADA, monetary damages and recovery of their reasonable

attorneys' fees and costs.

11.     Plaintiffs seek to send a clear message that segregated services and inaccessible

public accommodations are no longer permitted under the law and can no longer be tolerated.

Defendants lose a large customer base by excluding customers who use wheelchairs from the full

and equal enjoyment of Defendants' stores.

## JURISDICTION

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1343 and pursuant to its pendent jurisdiction over claims brought under the laws of

the State of Colorado.

13.     Venue is proper within this District pursuant to 28 U.S.C. § 1391.

## PARTIES

14.     Colorado Cross-Disability Coalition ("CCDC") is a Colorado non-profit

corporation whose members are persons with disabilities and their non-disabled allies.

15.     Anita Hansen is substantially limited in the major life activity of walking and uses

a motorized wheelchair for mobility.  Anita Hansen is a CCDC member.

16.     Robert Sirowitz is substantially limited in the major life activity of walking and

uses a motorized wheelchair for mobility.  Robert Sirowitz is a CCDC member.

17.     Joshua Stapen is substantially limited in the major life activity of walking and

4

uses a motorized wheelchair for mobility.  Joshua Stapen is a CCDC member.

18.     Robin Stephens is substantially limited in the major life activity of walking and uses a motorized wheelchair for mobility.  Robin Stephens is a CCDC member.

19.     Defendant Abercrombie & Fitch Co. ("A&F Co.") is a corporation, incorporated in Delaware in 1996.  A&F Co. is a retailer that operates stores and websites selling casual sportswear apparel under the Abercrombie & Fitch, abercrombie, Hollister and other brands. A&F Co.'s principal place of business located at 6301 Fitch Path, New Albany, OH 43054.  On information and belief, A&F Co. is the parent company for the other defendants in this case, and each of these defendants operate stores in Colorado.

20.     Defendant Abercrombie & Fitch Stores, Inc. ("A&F Stores") is a subsidiary of A&F Co.  A&F Stores operates clothing stores throughout the United States, including in Colorado.  The stores in Colorado operate under the names "Abercrombie & Fitch" and "abercrombie."  A&F Stores is a corporation, with its principal place of business located at 6301 Fitch Path, New Albany, OH 43054.  A&F Stores operates at least three "Abercrombie & Fitch" and at least two "abercrombie" stores in Colorado.

21.     J.M. Hollister LLC, d/b/a Hollister Co. ("Hollister") is a subsidiary of A&F Stores.  Hollister operates clothing stores throughout the United States, including in Colorado. The stores in Colorado operate under the name "Hollister Co."  Hollister is a limited liability company, with its principal place of business located at 6301 Fitch Path, New Albany, OH 43054.  Hollister operates at least seven "Hollister Co." stores in the state of Colorado.

## GENERAL ALLEGATIONS

22.     Defendants have discriminated against and continue to discriminate against

customers who use wheelchairs as more fully set forth in this Complaint.

23.     A&F Stores owns and operates Colorado Abercrombie & Fitch and abercrombie stores that discriminate against individuals who use wheelchairs.

24.     A&F Stores owns and operates stores in Colorado that violate the ADA and CCRA.

25.     A&F Stores has designed, constructed and/or maintained service counters in its Colorado stores that are too high for customers in wheelchairs to reach.

26.     On information and belief, A&F Stores has failed to remove barriers in its Colorado stores that existed before the enactment of the ADA, if any exist, like inaccessible service counters and inaccessible merchandise display arrangements, when it could have done so without much difficulty or expense.

27.     On information and belief, A&F Stores has made alterations to its Colorado stores after the effective date of the ADA, and these altered areas and elements were not designed and constructed so that the altered portions are not readily accessible to and usable by customers who use wheelchairs.

28.     A&F arranges and maintains merchandise displays and other store displays in its Colorado stores that block access for individuals who use wheelchairs throughout the store.

29.     A&F arranges and maintains merchandise displays and other store displays in its Colorado stores that block access to fixed shelving displaying merchandise.

30.     Hollister discriminates against individuals who use wheelchairs for mobility.

31.     Hollister has designed, constructed and continues to maintain stores in Colorado that violate the ADA and CCRA.

32.     At least two of Hollister's Colorado stores have steps at their front entrances.

33.     In these Colorado stores, the entrances with stairs are the entrances used by the general public, and they are not accessible to individuals who use wheelchairs.

34.     All of Hollister's stores were designed, constructed or altered after the effective date of the ADA.

35.     In Hollister's stores with stairs, the steps lead up to a porch-like structure that has chairs, plants, tables, surf boards, advertising, merchandise and other items displayed on it; this structure is not accessible to individuals who use wheelchairs.

36.     Parts of the porch-like structures with stairs having all the amenities described is visible to customers who use wheelchairs, but they cannot access the porch-like structure.

37.     In Hollister stores having steps to the front entrance, Hollister provides a segregated set of doors with a door opening device on the wall located away from the porch-like entrance used by the general public, which, on information and belief, is intended to be accessible for individuals who use wheelchairs (hereinafter "Wheelchair Entrances").

38.     No signs at the front of the store inform customers who use wheelchairs that there is a separate entrance for them away from the porch-like structure.

39.     The Wheelchair Entrances in Hollister's stores are not used by the general public -- those who do not use wheelchairs.  The general public enters Hollister's stores through the porch-like structure.

40.     There is no International Symbol of Accessibility on the main public entrances identifying the direction to the Wheelchair Entrances

41.     In Hollister's stores with stairs, there is a small -- often difficult to find -- symbol

of accessibility on a door opener button in the vicinity of the Wheelchair Entrances.  This button and the signage used does not comply with the ADA Standards for Accessible Design.  *See* 28 C.F.R., pt. 36, app. A.

42.     In Hollister's stores with steps, individuals who do not use wheelchairs approach the store and walk in the store without any disruption; in contrast, CCDC members who use wheelchairs have approached the store, find the steps, assumed there is was no access and left, or they have had to search for another method of access.

43.     In Hollister's stores with steps, customers who can walk up the steps take advantage of the amenities provided on the elevated porch, and they have a choice of whether to enter the young men's side of the store (known as "Dude's") or the young women's side (known as "Betty's").

44.     In Hollister's stores with steps, customers who use wheelchairs who have found the door opening device and who have entered the store have experienced the following types of access barriers:

a.     They press the button, wait for the door to open slowly and then enter either the "Dude's" side or "Betty's" side.

b.     The only way to access the other side of the store (from "Dude's" to "Betty's," or vice versa) for a customer using a wheelchair is to go through the store to the service counter, mid-way back in the store, and then the individual can access the other side.

c.     Often, there is no accessible route between the Dude's and Betty's sides of the stores because merchandise displays, furniture, plants and other items block

accessible routes.

45.     The interior of Hollister's stores generally are arranged with merchandise, furniture, plants and other items which impede access through the store for customers who use wheelchairs.

46.     Hollister displays merchandise on fixed shelving, which is designed for self-service by customers.  This fixed shelving and what is displayed there has merchandise, furniture plants and other items blocking access for customers who use wheelchairs.  Customers who can walk can access the merchandise on the fixed shelving displays.

47.     Hollister's stores have customer service counters where merchandise is purchased that are too high for customers who use wheelchairs to reach or use and do not have a lowered portion of the service counter that is accessible.

48.     As a result of the inaccessibility of Hollister's customer service counters, customers who use wheelchairs do not have equal access to transacting sales and to the distribution of goods and services.

49.     On information and belief, Hollister has a policy or practice in place of designing and constructing stores with steps at the entrance used by the general public.

50.     On information and belief, Hollister intends to continue designing and constructing stores with steps at the entrance used by the general public.

51.     On information and belief, A&F Stores has a policy or practice of displaying furniture, merchandise and other items in front of merchandise displayed on fixed shelving, which prevents an accessible route for customers who use wheelchairs to the merchandise on the fixed shelving.

9

52.     On information and belief, Hollister has a policy or practice of displaying furniture, merchandise and other items in front of merchandise displayed on fixed shelving, which prevents an accessible route for customers who use wheelchairs to the merchandise on the fixed shelving.

53.     On information and belief, A&F Stores has a policy or practice of displaying merchandise on tables and display racks that block access to merchandise throughout the store.

54.     On information and belief, Hollister has a policy or practice of displaying merchandise on tables and display racks that block access to merchandise throughout the store.

55.     Hollister has a policy and/or its employees have a practice of locking Wheelchair Entrances during times when the stores are open to the public.

56.     On information and belief, Hollister has a policy of and/or practice of blocking the Wheelchair Entrances with tables and merchandise on the inside of the stores.

57.     Defendants have failed to maintain their stores so that they are accessible to individuals who use wheelchairs.

58.     Defendants have failed to train employees to ensure stores are accessible to individuals who use wheelchairs.

59.     On information and belief, Defendants' policies, practices and procedures that are alleged herein to discriminate against individuals who use wheelchairs are implemented in all Defendants' stores nationwide.

60.     Hollister has designed and constructed stores throughout the United States that have steps at their main public entrances.

61.     When undersigned counsel contacted Defendants to inform them of these ADA

10

violations at their Hollister Co. stores, Defendants responded as follows:

      a.      the porch-like store designs at Hollister stores comply with the ADA;

      b.      that the separate wheelchair entrance is part of an "integrated" design; and

      c.      that Hollister intends to continue building its store entrances in the future with steps at its entrances.

62.      Defendants generally denied having access barriers at any Abercrombie & Fitch and abercrombie stores.

63.      Despite being contacted by Plaintiff CCDC, Defendants have done nothing to change their policies, practices and procedures with respect to how the stores are designed, constructed, altered or maintained or to its policies regarding merchandise displays.

64.      Within two years prior to the filing of this Complaint, each of the Individual Plaintiffs have experienced some or all of the accessibility barriers described in this Complaint at Defendants' Colorado stores.

65.      On information and belief, other CCDC members who use wheelchairs have experienced accessibility barriers at all of Defendants' stores like those described in this Complaint, have been damaged by and will continue to be damaged by Defendants' unlawful discrimination.

66.      On information and belief, the same barriers to full accessibility that CCDC members who use wheelchairs have experienced in Defendants' Colorado stores also exist in Defendants' stores outside of Colorado.

67.      Defendants have been involved in lawsuits before the instant case regarding claims of ADA violations and a lack of accessibility for individuals who use wheelchairs.

68.   On information and belief, Defendants have been named as defendants in litigation in other jurisdictions regarding claims that they violated the ADA with respect to providing services, privileges and amenities to customers with disabilities.

69.   CCDC is a membership organization having members who use wheelchairs throughout the state of Colorado.

70.   As a result of Defendants' failures to make their stores accessible, CCDC has investigated and is investigating complaints by individuals who use wheelchairs about accessibility at Defendants' stores.

71.   CCDC has filed two prior lawsuits against Defendant A&F Stores regarding wheelchair accessibility in two specific Abercrombie & Fitch Colorado stores.  These cases were resolved.

72.   A&F Stores has been aware of the accessibility issues raised by CCDC in its stores for over fifteen years.

73.   CCDC has members who use wheelchairs who have experienced and/or are likely to experience barriers to accessibility at Defendants' Colorado stores.

74.   CCDC's purpose is to work for systemic change that promotes independence, self-reliance, and full inclusion for people with disabilities in the entire community.  As part of that purpose, CCDC seeks to ensure that persons with disabilities have access to -- and do not encounter discrimination in -- the goods, services, facilities, privileges, advantages, or accommodations provided by places of public accommodation.

75.   CCDC engages in extensive outreach as well as advocacy and educational efforts to promote access for and combat discrimination against people with disabilities.  This effort and

this purpose have been and continue to be adversely affected by the Defendants' violations of the laws cited herein.

76.     Defendants' actions have caused and continue to cause distinct, palpable, and perceptible injury to CCDC.

77.     CCDC has devoted resources, which could have been devoted to its other outreach, advocacy, and educational efforts, to communicating with Defendants in an attempt to secure non-discriminatory policies and store access.

78.     CCDC has devoted resources, which could have been devoted to its other outreach, advocacy, and educational efforts, to counseling members and others who have been injured by Defendants' discrimination.

79.     As set forth in this Complaint, Defendants' discrimination has been and continues to be a barrier to the full participation of persons with disabilities and, therefore, frustrates CCDC's ability to achieve full inclusion for persons with disabilities.

80.     Defendants' discrimination has required and continues to require CCDC to make a greater effort -- and to allocate significant resources -- to educate the public that such discrimination is wrong and otherwise to counteract the adverse impact of such discrimination. This perceptibly impairs CCDC's counseling, advocacy, educational, and training missions.

81.     CCDC also has devoted and continues to devote resources -- including but not limited to those devoted to the present lawsuit -- to identifying and counteracting the sources of discrimination in the community, including that of Defendants.

82.     CCDC's injuries -- including, without limitation, those described herein -- are traceable to Defendants' discriminatory conduct alleged in this Complaint and will be redressed

by the relief requested in it.

83.     CCDC's members and their spouses, friends, relatives, and associates have been injured and will continue to be injured by Defendants' discrimination.

84.     The elimination of discrimination, such as that of Defendants, and the integration of persons with disabilities into all aspects of community life are at the core of CCDC's organizational purpose.

85.     The participation of individual CCDC members in the lawsuit is not required either to resolve the claims at issue or to formulate relief.

86.     Defendants maintain and/or engage in policies, practices and procedures that violate the ADA and/or CCRA.

## FIRST CLAIM FOR RELIEF
(Violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*)

87.     Plaintiffs reallege and reincorporate by reference the remainder of the allegations set forth in this Complaint as if fully set forth herein.

88.     Defendant A&F Stores owns and operates Abercrombie & Fitch and abercrombie stores internationally and in the United States, and some of these stores are in Colorado.

89.     A&F Stores' stores and Hollister's stores are places of public accommodation under 42 U.S.C. § 12181(7)(e).

90.     A&F Co. is the parent company of A&F Stores.

91.     A&F Stores is the owner of the subsidiary Hollister.

92.     All Hollister Co. stores were designed and constructed or were alterations after the effective date of the ADA.

93.     On information and belief, all of the Abercrombie & Fitch and abercrombie stores

14

in Colorado were designed, constructed or altered after the effective date of the ADA.

94.     All of Defendants' stores designed and constructed after the effective date of the ADA were required to be designed, constructed or altered so that they are readily accessible to and usable by individuals who use wheelchairs.  42 U.S.C. § 12183(a).

95.     Defendants' stores that were designed, constructed or altered after the effective date of the ADA were not designed, constructed or altered so that they are readily accessible to individuals who use wheelchairs.

96.     Defendants' stores that were designed, constructed or altered after the effective date of the ADA were required to be designed, constructed or altered to comply with the Department of Justice's Standards for Accessible Design ("Standards").  42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app A.

97.     Defendants' stores that were designed, constructed or altered after the effective date of the ADA do not comply with the Standards.

98.     In Defendants' Abercrombie & Fitch and abercrombie stores that were not designed, constructed or altered after the effective date of the ADA, if any, Defendants are required to have removed barriers to accessibility where such removal is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).  Whether barrier removal is "readily achievable" is determined by reference to the factors in 42 U.S.C. § 12181(9), which includes without limitation the overall financial resources of any parent company.  28 C.F.R. § 36.104.

99.     Defendants have failed to remove barriers to accessibility in their stores for individuals who use wheelchairs where such removal is readily achievable.

100.     Defendants are required to provide individuals who use wheelchairs full and

equal enjoyment of their stores.  42 U.S.C. § 12182(a).

101.    Defendants have failed and continue to fail to provide individuals who use wheelchairs the full and equal enjoyment of their stores.

102.    Defendants unlawfully discriminated against Plaintiffs and will continue to discriminate against Plaintiffs unless this Court orders an injunction prohibiting such discrimination.

103.    Plaintiffs were damaged by Defendants' discrimination and will continue to be damaged by Defendants' discrimination unless this Court orders them to comply.

**SECOND CLAIM FOR RELIEF**

(Violation of the Colorado Civil Rights Act "CCRA," Colo. Rev. Stat. § 24-34-601, *et seq.*)

104.    Plaintiffs reallege and reincorporate by reference the remainder of the allegations set forth in this Complaint as if fully set forth herein.

105.    Under the CCRA,

It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability . . ., the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation[.]

Colo. Rev. Stat. § 24-34-601(1).

106.    Any person who violates section 601 above "shall forfeit and pay a sum of not less than fifty dollars nor more than five hundred dollars to the person aggrieved thereby . . . ." Colo. Rev. Stat. § 24-34-602(1).

107.    Defendants own and operate the stores about which Plaintiffs' complain in this lawsuit.

108.    Defendants are liable for the failures to comply with the CCRA.

109.    The CCRA is to be construed consistently with the ADA and other federal civil rights statutes.  3 Colo. Code. Reg. 708.60.1(c).

110.    As set forth in this Complaint, Defendants have violated the CCRA by denying individuals who use wheelchairs the full and equal enjoyment of the goods, facilities, services and accommodations of their stores.

111.    Defendants' violations of the CCRA have harmed Plaintiffs and will continue to harm Plaintiffs and will continue to do so unless the Court orders Defendants to comply.

112.    Plaintiffs have been damaged and will continue to be damaged by Defendants' violations of the CCRA.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray:

1.    That this Court assume jurisdiction;

2.    that this Court issue an injunction ordering Defendants to comply with the ADA and the CCRA;

3.    that this Court award monetary damages to Plaintiffs to the maximum extent permitted;

4.    that this Court award reasonable attorneys' fees and costs; and

5.    that this Court award such additional or alternative relief as may be just, proper and equitable.

**JURY DEMAND**:  Plaintiffs demand a jury on all issues which can be heard by a jury.

Dated: November 24, 2009

Respectfully submitted,

/s Kevin W. Williams
Kevin W. Williams
 Legal Program Director
Carrie Ann Lucas
 Director, Center for the Rights of Parents with Disabilities
Colorado Cross-Disability Coalition
655 Broadway, Suite 775
Denver, CO 80203
Voice: 303.839.1775
TTY: 303.839.0015
Facsimile: 303.839.1782
E-mail: kwilliams@ccdconline.org
E-mail: clucas@ccdconline.org

Address of Plaintiff Colorado Cross-Disability Coalition:

655 Broadway, Suite 775
Denver, CO 80203

Address of Anita Hansen:                          Address of Robin Stephens:

7400 W. Grant Ranch Blvd.                         4411 South Washington Street
Littleton, CO 80123                               Englewood, CO 80113

Address of Robert Sirowitz:                       Address of Joshua Stapen:

801 Englewood Parkway, Apt. E-101                 3610 Pointer Way
Englewood, CO 80110                               Highlands Ranch, CO 80126