IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-02757-WYD-KMT

COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit Corporation,
ANITA HANSEN,
ROBERT SIROWITZ,
JOSHUA STAPEN,
ROBIN STEPHENS, and
BENJAMIN HERNANDEZ

  Plaintiffs,

v.

ABERCROMBIE & FITCH CO.,
ABERCROMBIE & FITCH STORES, INC., and
J.M. HOLLISTER LLC, d/b/a HOLLISTER CO.

  Defendants.

## SECOND AMENDED ORDER

I. INTRODUCTION

THIS MATTER is before the Court on Defendants' Renewed Motion to Dismiss for Lack of Standing filed September 20, 2010 [ECF No. 76].  Defendants move to dismiss this case for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  A response in opposition to the motion was filed on October 25, 2010, and a reply brief was filed on November 5, 2010.  Defendants also filed supplemental authority on December 3, 2010, and Plaintiffs filed a response to the supplemental authority on December 8, 2010.  For the reasons stated below, the motion to dismiss is denied.

II.     BACKGROUND

Plaintiffs Anita Hansen, Robert Sirowitz, Joshua Stapen, Robin Stephens, and Benjamin Hernandez are all wheelchair users and members of the Colorado Cross-Disability Coalition ("CCDC"). Am. Compl. ¶ 9. CCDC "is a Colorado non-profit corporation whose members are persons with disabilities and their non-disabled allies." *Id.* at ¶ 14. Plaintiffs, on behalf of themselves and all others similarly situated, allege that they have encountered accessibility barriers at Defendants' Hollister clothing stores. *Id.* at ¶¶ 15-19, 60-62, 89, 109, 117, 140, 156, 170, 182-83. Specifically, Plaintiffs claim that Defendants discriminate against customers in wheelchairs in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Colorado Civil Rights Act, Colo. Rev. Stat. § 24-34-601 *et seq.,* by: (1) designing stores with separate, segregated entrances for individuals who use wheelchairs; (2) locking doors that are supposed to give individuals in wheelchairs store access; (3) constructing service counters that are too high to be used by individuals confined to wheelchairs; and (4) "arranging merchandise displays, furniture, plants, etc. in their stores that . . . block access to customers who use wheelchairs throughout the store." *Id.* at ¶¶ 1, 8, 60-193

Based on these alleged violations, Plaintiffs seek prospective injunctive relief requiring "Defendants to comply with the ADA with respect to all Hollister Co. stores nationwide and all Abercrombie & Fitch and Abercrombie stores in Colorado." *Id.* at 33. In addition, Plaintiffs seek the certification of a Rule 23 class consisting of "all people with disabilities who use wheelchairs for mobility who, during the two years prior to the filing of the complaint . . ., were denied the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any Hollister Co. store in the United States on the basis of disability." *Id.* at ¶ 47.

In the pending motion to dismiss, Defendants assert that the individual named Plaintiffs do not have standing to seek nationwide injunctive relief, but rather are limited to seeking relief vis-à-vis the store locations for which they intend to return. Defendants further assert that CCDC lacks organizational standing to bring an ADA claim on behalf of its members, first, because CCDC has failed to identify any members who would be able to bring an action on their own behalf (other than those who are already named parties to the complaint), and second, because the participation of unnamed CCDC members would be required in the suit.

III.  ANALYSIS

   A.  Standard

Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can come in the form of either a facial attack to the allegations of the complaint or a factual attack. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). With a facial attack, as here, the Court must look to the factual allegations of the Complaint, *see Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971), accepting Plaintiffs' allegations of material fact as true. *Riggs v. Albuquerque*, 916 F.2d 582, 584 (10th Cir. 1990). In addition, where the district court dismisses an action for lack of jurisdiction, the dismissal must be without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (citing *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir.2004); *Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir.1973) ("It is fundamental . . . that a dismissal for lack of jurisdiction is not an

adjudication of the merits and therefore . . . must be without prejudice.").

In regard to standing, the Supreme Court has developed a three-part test. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "First, the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical. . . .'" *Id.* at 560 (citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (citations omitted). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.*

"Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

    B.    <u>ADA Claim</u>

In their motion to dismiss, Defendants argue that neither the individual Plaintiffs nor CCDC have standing to assert a claim for nationwide injunctive relief. Def.'s Mem.

in Supp. of Renewed Mot. to Dismiss for Lack of Standing, ECF No. 76, at 1.  I will first address whether the individual named Plaintiffs have standing to proceed in this action.

### 1. Individual Named Plaintiffs

Defendants claim that Plaintiffs do not have standing to seek injunctive relief under the ADA "unless they have alleged, *inter alia*, that they intend to return to stores owned by defendants that have inaccessible conditions and thus face an imminent threat of future injury."  *Id.* at 3-4.  Further, Defendants argue that the individual named plaintiffs do not have standing to assert a claim against all Hollister stores nationwide because "they face no immediate threat of harm as to stores they have never patronized and do not intend to patronize in the future."  *Id.* at 2, 4.  I address both issues below.

"[A] plaintiff seeking injunctive relief premised upon an alleged past wrong must demonstrate a 'real and immediate threat' of repeated future harm to satisfy the injury in fact prong of the standing test."  *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1333 (N.D. Cal. 1994) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983)).  In order to demonstrate a 'real and immediate' threat of future injury in an ADA claim, a plaintiff need only show that he has visited a public accommodation on a prior occasion, suffered an injury on account of accessibility barriers, and is currently deterred from visiting that accommodation on account of those barriers.  *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008); *see Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc.*, 528 U.S. 167, 184 (2000) (Plaintiffs claim that they would "use the nearby North Tyger River for recreation if [the defendants] were not discharging pollutants into it" was sufficient to demonstrate injury in fact.).

Here, the individual named Plaintiffs have satisfied the "real and immediate threat" requirement. The named Plaintiffs have alleged that they will return to Defendants' stores if the ADA violations are remedied. Am. Compl. ¶¶ 60, 111, 115, 134, 148-49, 153, 165, 191-92. In the meantime, the named Plaintiffs "[w]ill continue to be deterred and discouraged from going to Defendant's Hollister stores," *Id.* at ¶¶113, 151, 167, but will return periodically to test whether the accessibility barriers still exist. *Id.* at ¶¶112, 137, 150, 166, 193. Thus, to the extent that Defendants argue that Plaintiffs have not alleged a future injury, the motion is denied.

Defendants also assert that the individual Plaintiffs "have no standing to obtain injunctive relief with respect to any specific store unless they allege that they encountered inaccessible conditions *at that store* and intend to return *to that store.*" Def.'s Mem. in Supp. of Renewed Mot. to Dismiss for Lack of Standing, ECF No. 76, at 12 (emphasis in original). In response, the individual Plaintiffs contend that they may seek nationwide injunctive relief because the access barriers alleged in this case result from common policies and designs. In support of this assertion, Plaintiffs rely on the reasoning set forth in *Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035 (N.D. Cal. 2009). In *Castaneda*, the plaintiff alleged violations of the ADA at a subset of Burger King restaurants in California. While the plaintiff had only visited two of these restaurants, he brought an action on behalf of a putative class including all individuals who used wheelchairs and were discriminated against at each of the restaurants within the subset, seeking injunctive relief vis-à-vis all ninety restaurants. *Id.* at 1038-39. The *Castaneda* Court held that, "[T]he ADA proscribes not only discrimination resulting from a particular physical barrier at a specific location but rather discriminatory practices –

'policies, practices, or procedures' that affect public accommodations . . . ." *Id.* at 1042. Consequently, "[T]he specific injury under the ADA is not a specific barrier at a specific site but instead the discriminatory policy or design or decision. If an offending policy or design gave rise to more than one violation, then reversing the policy should eliminate more than one barrier." *Id.* at 1043.

Defendants note that in a later decision addressing whether class certification requirements were met, "[T]he *Castaneda* Court . . . held that a separate certified class would be necessary for the claims asserted against each separate [Burger King] store." Def.'s Reply Mem. in Supp. of Renewed Mot. to Dismiss for Lack of Standing, ECF No. 82, at 7. The *Castaneda* court did not, however, conclude that injunctive relief affecting a nationwide chain of stores would not be possible when there was a common architectural plan or policy violative of the ADA; rather when the court considered whether class certification was appropriate it found that, "[b]ecause each location has unique facilities, there is neither a common core of salient facts regarding what accessibility barriers each restaurant's patrons face nor a shared predicate legal issue of whether each restaurant's facilities violates the ADA or California statutes." *Castaneda v. Burger king Corp.,* 264 F.R.D. 557, 566 (N.D. Calif. 2009).

Here, Plaintiffs claim that Defendants' Hollister stores nationwide share a uniform architectural design that violates the ADA's accessibility requirements. Am. Compl. ¶¶ 11, 26, 32-35, 37. Plaintiffs also contend that Defendants utilize a uniform policy of merchandising and/or floor plans for their Hollister stores nationwide. *Id.* at ¶ 4 ("According to [Defendants'] March 2009 form 10-K submitted to the federal Securities and Exchange Commission . . . 'Every brand displays merchandise uniformly to ensure

a consistent store experience, regardless of location. Store managers receive detailed plans designating fixture and merchandise placement to ensure coordinated execution of the Company-wide merchandising strategy.'"). I find the reasoning in *Castaneda*, *supra*, to be persuasive in this case. Plaintiffs have alleged that Defendants' ADA violations are the result of a uniform policy and design creating common barriers among Defendants' stores nationwide. At this stage of the litigation I must accept Plaintiffs factual allegations as true. Therefore, I find the individual named Plaintiffs have standing to bring a claim requesting nationwide injunctive relief.

### 2. CCDC

I now turn to the Defendants' assertion that CCDC lacks associational standing. "[A]n association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy. . . . [or,] in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Here, in response to the motion to dismiss, CCDC contends that it only asserts a claim on behalf of its members, so I need not consider whether the organization would be able to assert standing on its own behalf. Pl.'s Resp. to Def.' Renewed Mot. to Dismiss for Lack of Standing, ECF No. 81, at 9 n.6.

The Supreme Court reified the rule governing the standing of associational plaintiffs in *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977):

> [W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted

nor the relief requested requires the participation of individual members in the lawsuit.

Since Defendants do not challenge the second prong of the test, I will address only the first and third prongs of the associational standing test.

i. <u>Whether CCDC Members Would Otherwise Have Standing</u>

Defendants claim that in order for CCDC's members to have associational standing it must first identify "unnamed" members who would have standing in their own right. Def.'s Mem. in Supp. of Renewed Mot. to Dismiss for Lack of Standing, ECF No. 76, at 10. As noted above, *Hunt* requires an organization to identify members who would be able to assert standing on their own behalf, but the *Hunt* Court never stated that these members could not *also* be individual named plaintiffs in the suit. *Hunt*, 432 U.S. at 343. The Tenth Circuit clarified this issue in *Roe No. 2 v. Ogden*, 253 F.3d 1225 (10th Cir. 2002), holding that the first prong of the *Hunt* test was satisfied when the single named plaintiff was a member of the associational plaintiff's organization. *Ogden*, 253 F.3d at 1230 (citing *Warth,* 422 U.S. at 511). Here, there are five named plaintiffs who are each members of CCDC and, as set forth above, each of the individual named Plaintiffs have standing to bring a claim requesting nationwide injunctive relief. Thus the first prong of the *Hunt* test has been satisfied.

In addition, I find that Defendants reliance on *Equal Rights Ctr. v. Hilton Hotels Corp.*, No. 07-1528, 2009 WL 6067336 (D.D.C. March 25, 2009), is misplaced. In that case, the district court rejected an organization's attempt to establishing standing on behalf of its members because it neglected to list who the effected members were, which hotels they had visited, what accessibility barriers they encountered at those

hotels, and whether they planned to return. Def.'s Renewed Mot. to Dismiss for Lack of Standing, ECF No. 76, at 11. *Hilton* is not binding authority and, moreover, this case is distinguishable from *Hilton* in two important respects: First, CCDC has identified five of its members who have encountered accessability barriers at Defendants' stores, noting the specific locations of those stores, the type of accessibility barriers encountered, and the intention of the members to return to the stores in the future. Second, unlike *Hilton*, the Plaintiffs in this case have alleged a uniform store design that has created accessibility barriers at all of Defendants' store locations.

          ii.      <u>Whether Participation of CCDC Members is Required</u>

Finally, Defendants argue that CCDC cannot satisfy the third prong of the *Hunt* test because "CCDC cannot possibly prove that defendants' alleged violations of the ADA caused injury to its unnamed members unless they testify." Def.'s Mem. in Supp. of Renewed Mot. to Dismiss for Lack of Standing, ECF No. 76, at 11.

As a general rule, "[A]n association may assert a claim that requires participation by some members." *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991). The Supreme Court clarified the scope of this requirement in *Warth*: "[S]o long as the nature of the claim and of the relief sought does not make the individual participation of *each injured party* indispensable to proper resolution of the cause, the association may be an appropriate representative of its members . . . ." 422 U.S. at 511 (emphasis added). As the Seventh Circuit observed, "We can discern no indication in *Warth* . . . [or] *Hunt* . . . that the Supreme Court intended to limit representational standing to cases in which it would not be necessary to take any evidence from individual members of an association. . . . Rather, the third prong of *Hunt* is more

-10-

plausibly read as dealing with situations in which it is necessary to establish 'individualized proof' . . . for litigants not before the court in order to support the cause of action." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 601-02 (7th Cir. 1993).

I note that in *Kan. Health Care Ass'n, Inc. v. Kan. Dept. of Soc. and Rehab. Services*, 958 F.2d 1018 (10th Cir. 1992), the Tenth Circuit determined that two organizations representing nursing homes lacked standing to challenge state laws regulating Medicaid reimbursement schedules because the suit would "unavoidably require individual participation of their members." *Id*. at 1023.  In that case, however, the Court distinguished between claims that could be adjudicated with "a cursory review" by the Court or "with minimal participation from individual [plaintiffs]" from those requiring intensive analysis of the injuries sustained by individual members of the organization.  See *id.* at 1022.  Given the nature of the claims in that particular case, the Court found that it would have to "undertake a detailed evaluation of individual health care providers," and this would not be compatible with the third prong of *Hunt. Id.* at 23.

Here, while some participation of CCDC members may be required in the course of this suit, there is no indication at this stage in the proceeding that individualized proof would be required.  Moreover, the level of participation required in this case would fall well short of the individual participation required of the plaintiffs in *Kansas Health Care Ass'n*, *supra*, therefore I conclude that the third prong of the *Hunt* test has been satisfied.

For the reasons set forth above, Defendants' motion to dismiss Plaintiffs' ADA claim for lack of standing is denied.

### C. Colorado Civil Rights Act Claim

Finally, having determined that Plaintiffs have standing to assert a federal ADA claim, I need not address Defendants' request that I decline to exercise supplemental jurisdiction over Plaintiffs' claim brought under the Colorado Civil Rights Act (Colo. Rev. Stat. § 24-34-601 *et seq.*). Thus, Defendants' motion to dismiss Plaintiff's state law claim is denied.

## IV. CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendants' Renewed Motion to Dismiss for Lack of Standing filed September 20, 2010 [ECF No. 76], is **DENIED**.

Dated: June 2, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge