IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-02757-WYD-KMT

COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit Corporation,
ANITA HANSEN,
ROBERT SIROWITZ,
JOSHUA STAPEN,
ROBIN STEPHENS, and
BENJAMIN HERNANDEZ,

      Plaintiffs,

v.

ABERCROMBIE & FITCH CO.,
ABERCROMBIE & FITCH STORES, INC., and
J.M. HOLLISTER LLC, d/b/a HOLLISTER CO.,

      Defendants.

## ORDER

### I.    INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment, filed March 16, 2011, [ECF No. 87].  Defendants filed their Response in Opposition on May 11, 2011, [ECF No. 93] and Plaintiffs filed their reply on May 27, 2011, [ECF No. 96].  On May 31, 2011, a Statement of Interest regarding Plaintiffs' motion was filed by the United States, [ECF No. 97].  On June 8, 2011, Defendants filed an Unopposed Motion for Leave to Respond to the Statement of Interest [ECF No. 101].  Defendants' motion will be granted and their responsive considered.

### II.    BACKGROUND

The factual background of this case was set forth in this Court's Order denying

Defendants' Motion to Dismiss for Lack of Standing, originally entered May 18, 2011. It will not be repeated here. Plaintiffs' Motion for Partial Summary Judgment requests summary judgment on the issue of whether the entrances to Defendants'[1] Hollister clothing stores located at the Park Meadows and Orchard Town Center malls in suburban Denver violate Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12181 *et seq.*

## III.   ANALYSIS

### A.   Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

---

[1] Defendants agree that defendant J.M. Hollister LLC owns and operates the two stores at issue in this motion but deny that defendants Abercrombie & Fitch Co. or Abercrombie & Fitch Stores, Inc., own, lease or operate those stores. For purposes of this motion, it will be presumed that Defendants are correct.

B.   Undisputed Material Facts

The parties agree on some of the material facts regarding this motion.  The Hollister stores at issue were both built after the passage of the ADA.  Although one store is in an enclosed, "indoor" mall (Park Meadows) and the other is in an "outdoor mall" (Orchard Town Center), the design of the front of the stores is the same, at least for purposes of this motion.

Each store has a raised porch-like platform that is two steps above ground level.  It is not accessible to people in wheelchairs.  The platform is covered by a roof and contains a door leading into the store.  Inside the door are two steps down into either the half of the store with goods for males or the other half with goods for females.  On each side of the 'porch structure,' are two doors at ground level.[2]  The stores adjacent to the Hollister stores at both malls have ground level entrances.  Consequently the steps at the Hollister stores are purely ornamental.  The porch structure creates an aesthetic which is a valuable part of Defendant Hollister's branding efforts.

C. Arguments of the Parties and Nonparty

Plaintiffs' arguments start with the policy statements regarding the aims of the ADA and the timing for the requirements that new buildings be "readily accessible to and usable by individuals with disabilities."  42 U.S.C. § 12183(a)(1).  As mentioned, the parties agree that the Hollister stores were built after this ADA requirement went into effect.  They also agree that no exceptions apply to these stores.  There is no 'feasability' issue in this case.

---

[2] For purposes of this motion, the parties assume that the side entrances are 'accessible' as defined by the ADA.  To the Court, this contention appears questionable, considering some statements in the Third Amended Complaint, but the parties' agreement will be respected for purposes of this motion.

In particular, Plaintiffs allege that those stores violate the ADA regulation that requires that accessible entrances, where feasible, shall be the entrances used by the majority of people visiting or working in the building.  28 C.F.R. § 36.406 Appendix A- 1991 Standard for Accessible Design 4.1.3(8)(a) [hereinafter "Design Standard _._ "].[3]  Plaintiffs go on to note that the ADA encourages that facilities be provided in the "most integrated setting appropriate."  42 U.S.C. § 12182(b)(1)(B).  A discussion of the statutory aim of ending the segregation of handicapped individuals and allowing them, whenever possible, to use the same facilities as individuals who are not disabled is also discussed by Plaintiffs.  It is their view that the two entrances that frame the porch-like structure of the central door are 'separate' and 'different' entrances that are an important part of what the statutory plan was attempting to preclude.

It is Defendants' contention that the Hollister stores do not violate the ADA, its regulations or standards.  Their briefs contain several arguments in support of this position.  The first is that the words in the Design Standard quoted above including the words "where feasible," are an aspirational standard that essentially can be ignored when adequate accessible entrances are provided.  This argument must be rejected in light of the use of the mandatory "shall" in that sentence.

As an alternative, Defendants argue that even if the three doors at the front of Hollister stores comprise three separate entrances, the feasability standard set forth in Design Standard 4.1.3(8)(a), by its own terms, refers only to entrances used by the majority of people entering the facility.  Only for those 'majority use' doors does the Design

---

[3] The ADA Accessory Guidelines were revised in 2010 but the parties (and the Nonparty, United States) agree that the original regulations were what was in effect at the time these stores were built.

-4-

Standard relied upon by Plaintiffs express that they should be accessible if feasible. Defendants argue that Plaintiffs have presented no evidence to show that the center door is the majority use door and it would be improper for the Court to assume this 'crucial' fact. Furthermore, they contend that as the center door involves a 'more arduous and less direct route,' it would make no sense for the Court to assume the center door is used by a majority of customers.

Defendants rely on another subsection of the same Design Standard to argue that the doors at the Hollister stores meet the requirement that "[a]t least 50% of all public entrances . . . must be accessible." Design Standard 4.1.3(8)(a)(i).

Defendants' main argument appears to be that all three doors at the Hollister stores are part of the same 'entrance.' In support, Defendants point out that the three doors are on the same side of the building and constitute a continuous series along the wall. They all lead from the general mall area to inside the store. Defendants note that the ADA Design Standards define entrance as possibly including more than a single door. Design Standard 3.5.[4] They go on to note another Design Standard provides that "[a]t each accessible entrance to a building or facility, at least one door shall comply with 4.13." Design Standard 4.1.3 (7)(a). Since both side doors must be considered accessible in light of the parties' stipulation for this motion, the entrances to the two Hollister stores comply with both Design Standards 4.1.3(8)(a)(I) and 4.1.3 (7)(a). In fact, not only 50%, but in

---

[4] "Entrance. Any access point to a building or portion of a building or facility used for the purpose of entering. An entrance includes the approach walk, the vertical access leading to the entrance platform, the entrance platform itself, vestibules if provided, the entry door(s) or gate(s), and the hardware of the entry door(s) or gate(s)."

excess of 66% of the front doors at the entrance to the stores are accessible.[5]

To strengthen their argument, and because the Design Standards do not include a provision that deals exactly with the configuration at issue in this case, Defendants have searched the Design Standards for analogous situations. They point out that one subsection provides that an inaccessible revolving door and an accessible door are considered a single accessible entrance if the accessible door is adjacent to the revolving door and allows the same use pattern. Design Standard 4.13.2. As the regulations do not define 'adjacent,' Defendants cite dictionary definitions to demonstrate that adjacent generally means close but not necessary adjoining.

Plaintiffs disagree strongly with Defendants' single entrance argument. In particular they reject Defendants' reliance on Design Standard 4.13.2. It is Plaintiffs' position that just because that particular Design Standard permits turnstiles or revolving doors if there is an adjacent accessible door, does not mean that the Department of Justice (DOJ) is articulating a general standard that is encouraging non-accessible doors if an accessible door is close by. Plaintiffs dispute that anything about the allowance of turnstiles or revolving doors gives any indications that the DOJ has separate rules for single entrances that include multiple doors.

As previously mentioned, the United States has also filed a Statement of Interest ("SOI") with regard to this motion. It notes that as the U.S. Attorney General has the statutory authority to enforce the ADA, it is appropriate for the United States to file this Statement of Interest. It further notes that as the DOJ promulgated the regulations which

---

[5] Although Defendants state that they have submitted affirmative evidence on the accessability of the side doors, in light of the parties' agreement for this motion only, it would be inappropriate for the Court to make any findings on the issue either way.

are applicable in this case, the Attorney General has a clear interest in ensuring their proper implementation.

On a substantive basis, the United States takes the position that because the stores at issue were built after the ADA took effect, both the design and the construction of the entrances 'violate the purpose and the letter of the ADA by unnecessarily relegating people who use wheelchairs to separate and objectively different entrances than those available for other people." SOI at 4.

As something built after the effective date of the statute, newly constructed facilities must comply with Design Standard 4.1.3(8) regarding feasibility.  The implementing regulations require compliance unless it is "structurally impractical to do so." 42 U.S.C.A. § 12183(a)(1). Regulations explain that the exception refers to "unique characteristics of terrain" that preclude application of some accessibility features. 28 C.F.R. §36.401(c)(1). As noted on page 3, Defendants acknowledge the exception does not apply to either of the stores at issue. Consequently, the United States argues, Defendants must make the stores accessible unless it is not feasible for them to do so. Defendants have conceded that they could easily make the applicable doors accessible.

Although the United States does not accept Defendants' argument that the three doors comprise a single entrance, it argues that whether it is one entrance or three, that does not change the fact that the two 'accessible'[6] doors are qualitatively different from the raised center door. It points to the lack of roof, plants, pictures and other features that the center door has but the side doors do not have. It further notes that Defendants' argument

---

[6] The United States also has its doubts as to whether the side doors are actually accessible.

about a single entrance would be more convincing if some of the features like the roof and decorations were expanded to include all three doors.

Defendants' response to the SOI strongly disputes the position of the United States ("DOJ"). They argue that the DOJ's position as argued in the SOI contradicts the definition of "entrance" in Design Standard 3.5 and is therefore entitled to no deference. Defendants believe that the definition of 'entrance,' quoted in footnote three of this Order, "expressly states that an entrance may have more than one elevation."[7] Resp. to SOI at 3.

Defendants' response goes on to make insupportable statements indicating that both the Plaintiffs and the DOJ unequivocally agree that the side doors are "fully accessible."[8] It then reiterates its position that as two of the three doors outside the Hollister stores at issue are accessible, that more than complies with the requirements in Design Standards 4.1.3(7)(a), 4.1.3(8)(a)(i), 4.1.3(8)(a)(ii), and 4.1.3(8)(a).

Defendants also argue that the DOJ's indication that the three doors might be considered a single entrance if the design elements were more similar to each other, shows the weakness of its argument that the definition of entrance allows only one level of elevation at all doors in an entrance. They further point out that the Design Standards do not suggest in any way that store decorations should affect the determination whether

---

[7] The United States agrees that an entrance may include more than a single door but it takes the position that because the doors at Defendants' stores are on different elevations, the definition in 3.5 precludes them from being considered a single entrance. As noted though, the United States couches its ultimate opinion as valid whether the doors are considered a single or three separate entrances.

[8] "Plaintiffs do not dispute that the other two front entry doors at each store are fully accessible" and "The United States does not dispute that two of the three adjacent entry doors at the front of each of the stores at issue are fully accessible and comply with all ADA Standards." Resp. to SOI at 2.

multiple doors constitute one entrance or several.

Defendants' next argument is that it is essentially illogical to assume that they have created 'second class, segregated side entrances' that would discourage shoppers who use wheelchairs. Resp. to SOI at 5. Like all retailers, they say, they strive to increase the number of customers, not the contrary. They reiterate that the raised porch is part of a brand design to convey a certain ambiance and appearance that makes the store inviting as a whole.[9] In this vein, they continue that the "fully compliant" side doors "permit the same pattern of use as the raised entry door and equal access to all merchandise." Resp. to SOI at 5.

The final point in Defendants' response to the SOI is that the reliance of Plaintiffs and the DOJ on Design Standard 4.1.3(8)(a) cannot succeed because whether the porch door is the 'entrance used by the majority of persons entering the store' is a genuine issue of material fact.

D. Application of Law to Facts

Defendants use a variety of arguments to attempt to make the point that their center door which, at the very least, includes a porch and roof and access to the male or female side of the store, is not preferable to the side doors which, even if they are assumed to be accessible, lead to either the male- or female-oriented side of the store and therefore necessitate additional travel through a possibly crowded store if one needs to reach the

---

[9]Defendants cite a statement in the declaration of their Senior Director of Store Planning, attached to their response to the motion, that "No merchandise is sold or presented on the porch-like structure." Hill Declaration at ¶8. This is not entirely true, as shown in the photograph in Plaintiffs motion and the photographs of the Park Meadows store, Ex. 1, included with the Declaration of Streckewald attached to the motion.

side devoted to the other gender.

To say that the issue of which door is used by a majority of customers is a genuine issue of fact ignores the obvious. Looking at the photographs attached to Plaintiffs' motion, it was not even clear that there are doors on either side of the porch. This was particularly true when the 'shutter' portion of the door was closed, although it seems doubtful whether the electronic door opener would work in those circumstances anyway. And while I tend to agree that the door opener would be readily visible to someone in front of the side doors, for anyone who was drawn to the decorated entrance, the door button would appear small and far away.

Defendants argue that by a variety of other measures, their present design is adequate. They note that it does allow entrance to people using wheelchairs if those people find the side doors and the doors are actually accessible; i.e. they are not locked, the electronic opener works and the path into the store is not blocked by tables or merchandise. However, it is not a preferable entrance by any means because there do not appear to be any signs outside the store explaining which side has goods for males or for females. While it is possible that a wheelchair-bound customer might be able to make that determination by looking through the glass in the doors, it is just as likely that close to 50% of the side door entrants would need to make their way through the store to the other side. Obviously this is easier said than done for individuals in wheelchairs. Clearly the side doors do not "permit the same pattern of use as the raised entry door and equal access to all merchandise" as argued by Defendants. Resp. to SOI at 5.

Defendant has strongly objected to the DOJ's characterization of their treatment of customers who must use their side doors as second class because they cannot use the

main door.  By citing one of the many small subsections with which they have complied, Defendants contend "[t]he Standards thus recognize that accessible and inaccessible entrances may be 'different or separate' as long as the other standards are met." Resp. to SOI at 6.

Once again Defendants are missing the big picture.  Compliance with numerous precise design standards does not protect them from violating the broad statutory requirements.

> **It shall be discriminatory to provide** an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or **accommodation that is different or separate** from that provided to other individuals, **unless such action is necessary** to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.

42 U.S.C.A. §12182(b)(1)(A)(iii) (emphasis added).

It is precisely this sort of language, as well as similar provisions such as "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the **most integrated setting appropriate** to the needs of the individual" that provide support for the general position that the ADA seeks to eliminate unequal access for people with disabilities.   42 U.S.C.A. §12182(b)(1)(B) (emphasis added).

It appears that Defendants would prefer to take the micro view that allows them to comply with the details in the regulations without taking the aims of the ADA to heart and fulfilling its overarching aims.  This is where Plaintiffs' seminal provision comes in: "Where feasible, accessible entrances shall be the entrances used by the majority of the people

visiting or working in the building." Design Standard 4.1.3(8)(a). Unlike the specific provisions with which Defendants apparently do not have trouble complying, this one is more general and is likely meant further emphasize that one aim of the ADA is that new buildings be "readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(1). Defendants have unnecessarily created a design for their brand that excludes people using wheelchairs from full enjoyment of the aesthetic for that brand. The steps to the center entrance are a legally unacceptable piece of that branding and violate Title III of the ADA.

IV. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Defendants' Unopposed Motion for Leave to Respond to the Statement of Interest [ECF No. 101] is GRANTED and their responsive brief is accepted for filing.

It is, further

ORDERED that Plaintiffs' Motion for Partial Summary Judgment, filed March 16, 2011 [ECF No. 87], is GRANTED. Therefore the center front entrances at the Hollister stores at Park Meadows mall and Orchard Town Center mall violate Title III of the Americans with Disabilities Act.

Dated: August 31, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge