IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior District Judge Wiley Y. Daniel**

Civil Action No.   09-cv-02757-WYD-KMT

COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit corporation;
ANITA HANSEN; and
JULIE FARRAR, on behalf of themselves and all others similarly situated,

  Plaintiffs,

v.

ABERCROMBIE & FITCH CO., *et al.*,

  Defendants.

---

## ORDER

---

I. <u>BACKGROUND</u>

  THIS MATTER comes before the Court on Plaintiffs' Motion for Summary Judgment, Entry of Injunction, and Entry of Judgment, filed April 27, 2012 [ECF No. 162], and Defendants' Motion for Summary Judgment or, In the Alternative, To Vacate August 31, 2011 Order [ECF No. 164].  The motions have been fully briefed by the parties and the United States Department of Justice ("DOJ") has filed its Statement of Interest On the Parties' Motions for Summary Judgment ("Statement of Interest").  [ECF No. 181].  Based on these briefs and oral argument to the Court on January 24, 2013, I grant Plaintiffs' motion and deny Defendants' motion as more fully set forth below.

  Plaintiffs, a class of individuals who use wheelchairs or scooters for mobility, challenge the raised porch entrances at approximately 248 Hollister brand stores

operated by Defendant Abercrombie & Fitch Stores LLC.  On August 31, 2011, this

Court held that the raised porch entrances at two stores in Colorado were in violation of

section 4.1.3(8) of the 1991 Department of Justice Standards for Accessible Design

("1991 Standards"), 28 C.F.R. pt. 36, app. D (2012), and therefore of Title III of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12183(a)(1).  *Colo. Cross-Disability*

*Coal. v. Abercrombie & Fitch Co.*, 835 F. Supp. 2d 1077, 1080 (D. Colo. 2011).  [ECF

No. 109.]  On April 20, 2012, this Court certified a class defined as follows:

> all people with disabilities who use wheelchairs for mobility who, during the
> two years prior to the filing of the Complaint in this case, were denied the
> full and equal enjoyment of the goods, services, facilities, privileges,
> advantages, or accommodations of any Hollister Co. Store in the United
> States on the basis of disability because of the presence of an Elevated
> Entrance.

*Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 2012 WL 1378531, at * 1, 7 (D.

Colo. Apr. 20, 2012).  [ECF No. 161.]

Following certification of the class, Plaintiffs moved to extend the summary

judgment holding to the remainder of the Hollister stores with Raised Porch Entrances.

Defendants simultaneously moved for summary judgment and/or to vacate the Court's

August 31, 2011 order on the grounds that they had made modifications to the

remaining open store visited by the Representative Plaintiffs, and that the stores in

question were in compliance with the 2010 DOJ Standards for Accessible Design ("2010

Standards").[1]  It is these motions that are currently before the Court.

---

[1]     The 2010 Standards consist of the 2004 ADAAG, 36 C.F.R. pt. 1191,
apps. B & D, and subpart D of 28 C.F.R. pt. 36.  *See* 28 C.F.R. § 36.104 (definitions).
The 2010 Standards and the DOJ's guidance thereto are published on the Department's

II.    FINDINGS OF FACT

1.      Defendant Abercrombie & Fitch Co., through subsidiaries Abercrombie & Fitch Stores, Inc., and JM Hollister, LLC, (collectively "Defendants"), operates approximately 500 Hollister brand stores around the country.  *See* Defs.' Mot. for Summ. J. or, In the Alternative, to Vacate August 31, 2011 Order [ECF No. 164 at ¶ 1].

2.      Plaintiffs Julie Farrar and Anita Hansen (the "Representative Plaintiffs") are individuals who live in the Denver area.  Both are substantially limited in the major life activity of walking, and both use wheelchairs for mobility.

3.      Plaintiff Colorado Cross Disability Coalition ("CCDC") is a Colorado non-profit that advocates for the rights of individuals with disabilities and their allies.

4.      The front areas of approximately 248 of the Hollister stores around the country are configured similarly.  They contain a raised front porch that leads to two possible store entrances:  one to the "Dudes" side, containing men's clothing, and the other to the "Bettys" side, containing women's.  Steps lead up to the porch from the mall floor and then down from the porch into the two sides of the store.  Decl. of Amy F. Robertson in Support of Summary Judgment, Entry of Injunction, and Entry of Judgment, Ex. 7 ("Robertson Decl.") [ECF No. 172, 172-1 through -3], Defs.' Combined Opp'n to Pls' Amd. and Supplemented Mot. for Summ. J. and Reply Brief in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Combined Opp'n") at  ii ¶ 2 [ECF No. 179].  These porches, which will be referred to herein as "Raised Porch Entrances," are accessible

website. http://www.ada.gov/2010ADAstandards_index.htm

only by steps, and are therefore inaccessible to people who use wheelchairs. Robertson Decl. Ex. 7; Defs.' Combined Opp'n at iv ¶ 12.

5.      The purpose of this Raised Porch Entrance "is to give the stores the aesthetic appearance of a Southern California surf shack . . . ."  Decl. of Michael Bondy ("Bondy Decl.") [ECF No. 164-1] ¶ 4.[2]  As such, the Raised Porch Entrance "is a significant aspect of the stores' branding and marketing efforts."  Decl. of Adam Hill ("Hill Decl.") [ECF No. 93-2] ¶ 8;[3] Def's Combined Opp'n at ii, ¶ 3.  The Raised Porch Entrance was included in the design "to create . . . an entry to a house in southern California that you would walk up onto the porch or walk down into the porch, to enter like you would do at a beach house." Hill Dep. 37:9 - 22; *see also id.* at 30:15 - 31:15; 33:19 - 34:7 (Robertson Decl. Ex. 5 [ECF No. 171-2]).

6.      The Raised Porch Entrances at Hollister stores have upholstered chairs, a marketing image, and mannequins displaying merchandise.  Bondy Dep. 54:9 - 55:3 (Robertson Decl. Ex. 4).  While the furniture is not intended as seating, customers are permitted to sit there.  *See id.* 55:14 - 56:1.  Where the porch is raised, *i.e.*, at the approximately 248 Hollister stores at issue here, customers in wheelchairs do not "have the ability to touch or feel the clothes" on display there or otherwise take part in this Hollister experience.  *See id.* 58:19 - 59:2.

---

[2]      Michael Bondy is the Senior Project Manager in the Store Construction Department of Abercrombie & Fitch Stores, Inc.  Bondy Decl. ¶ 1.

[3]      Adam Hill is Abercrombie & Fitch Co.'s Vice President of Store Design. Hill Dep. 19:21 - 20:2.

7.      Shoppers who use wheelchairs are not able to enter the stores through the Raised Porch Entrances.  Rather, they enter through accessible doors -- on the same level as the mall floor -- to each side of the Raised Porch Entrance.  The accessible side entrances are designed to look like French doors similar to the inoperable French doors farther to the left and right of the accessible side entrances.  Hill Dep. 107:2 - 108:10.

8.      Overall, the visual impression is of a main, decorated, primary but inaccessible entrance in the center, with smaller, inferior, undecorated accessible entrances to each side.

9.      All of the Hollister stores at issue were constructed after January 26, 1993 but before September 15, 2010.  Robertson Decl. ¶ 3 & Ex. 1 [ECF No. 171-2].

10.      Representative Plaintiffs have patronized the Hollister stores at the Orchard Towne Center and Park Meadows malls in the Denver area.  Both have experienced discrimination at those stores, and both have expressed intent to return to the Park Meadows store.  *See* Order [ECF No. 161] at 9-10.

11.      The Orchard Towne Center Hollister store is now closed.  Bondy Decl. ¶ 8.

12.      Following this Court's decisions granting partial summary judgment to Plaintiffs and certifying a nationwide class, Defendants made two changes to the Park Meadows Hollister store.  Signage has been added at each accessible side entrance indicating whether it enters into the "Dudes" side of the store (displaying men's clothing) or the "Bettys" side of the store (displaying women's clothing).  In addition, operable

door handles have been added (in addition to the push buttons) to each of these accessible doors.  Bondy Decl. ¶ 10.

III.    ANALYSIS

A.    Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, [the court] must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'"  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B.    Standing

This Court has previously held that the Representative Plaintiffs have standing to challenge the Raised Porch Entrances under Title III of the ADA.  Order [ECF No. 94] at 5-8 (denying Defendants' motion to dismiss for lack of standing); Order [ECF No. 161] at 9-11 (holding, as part of the typicality analysis for class certification, that the Representative Plaintiffs had standing).  Defendants argue that I must now reconsider

the Representative Plaintiffs' standing under a summary judgment standard, based on

evidence rather than pleadings.  My determination in the class certification order was,

however, based on the same evidence Defendants now submit.  I reaffirm my

conclusion that the Representative Plaintiffs have standing to challenge the Raised

Porch Entrances.

Defendants make two further arguments:  that there is no evidence that the

Representative Plaintiffs have returned to a Hollister store since Defendants added

signage and door handles; and that Plaintiffs have not identified a Representative

Plaintiff or class member with standing as to every store with a Raised Porch Entrance.

I will address each argument in turn.

      1.   <u>Recent Changes</u>

Defendants argue that the Representative Plaintiffs lack standing because they

have not returned to that store since the changes were made.[4]  However, the changes

at the Park Meadows store -- signage and door handles on the entrances to the sides of

the Raised Porch Entrances, *see supra* -- are not material to the discrimination alleged

or the injury suffered when the Representative Plaintiffs go to the store and encounter

the inaccessible Raised Porch Entrance.  Because the Representative Plaintiffs have

encountered and will continue to encounter discrimination at the Park Meadows store,

---

     [4]     Defendants argue that since the Orchard Towne Center Hollister store is
now closed, the case is moot as to that store.  However characterized, any injunction
will not cover closed stores.

they have standing regardless of whether they have attempted to visit since the recent changes.

### 2.   Standing to Challenge Hollister Stores Nationwide

Defendants also argue that Plaintiffs must establish individual standing with respect to each Hollister store covered by the class definition.  This is not required. Now that the Court has certified the class, the question with respect to the remaining stores is whether the class has standing.  There is no question that it does, as it was defined to include individuals who use wheelchairs who "were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any Hollister Co. Store in the United States on the basis of disability because of the presence of an Elevated Entrance."  Order [ECF No. 161] at 2.  That is, the class is precisely those individuals who have standing to challenge the steps at Hollister stores nationwide.

"[A] certified class becomes an independent juridical entity capable of satisfying the standing requirements of Article III."  *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1138 (10th Cir. 2009).  Once the court has determined that the Representative Plaintiffs have individual standing and that they satisfy the commonality and typicality requirements of Rule 23(a), the class -- once certified -- has standing to challenge the violations encompassed within the class definition.  For example, in *Lucas v. Kmart Corp.*, 2005 WL 1648182 (D. Colo. July 13, 2005), the plaintiffs sought certification of a nationwide class under Title III of the ADA challenging barriers to

wheelchair access at 1,500 Kmart stores.  Judge Kane held that Kmart's "objection regarding representative Plaintiffs' standing to assert claims on behalf of individuals who patronized other Kmart stores is subsumed by my determination that the Rule 23(a) prerequisites have been met."  *Id.* at *3; *see also Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 525-26 (S.D. Cal. 2011) ("Generally standing in a class action is assessed solely with respect to class representatives, not unnamed members of the class.  It is not required that each member of a class submit evidence of personal standing." (internal citations omitted).)

In making this argument, Defendants cite only to non-class cases holding that individuals or organizations were required to establish standing with respect to each facility they challenged.  However, it is precisely the fact that the class satisfies Rule 23(a) -- an element missing from all of Defendants' cases -- that provides class standing to challenge all of the Hollister stores within the class definition.

Were Plaintiffs required to identify a named plaintiff or class member with standing as to each store within the class definition, this would convert the case from a class action to a massive individual action, defeating the efficiencies of Rule 23. *See* 1 Newberg on Class Actions § 2:3 (5th ed.) ("[I]f class members other than the named plaintiffs were required to submit evidence of their standing, then the core function of class actions, wherein named plaintiffs represent a passive group of class members, would be significantly compromised.").  It would also significantly undermine Rule 23(b)(2)'s historic function as a tool to challenge discrimination that affects a class

of people in the same way.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) classes (quoting Adv. Comm. Notes, 28 U.S.C. App., at 697)); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (Rule 23(b)(2) "reflects a series of decisions involving challenges to racial segregation -- conduct that was remedied by a single classwide order").

     C.    <u>Title III of the Americans with Disabilities Act</u>

     Title III of the ADA prohibits discrimination on the basis of disability by those who own or operate places of public accommodation.  42 U.S.C. § 12182(a).  In enacting the ADA, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities."  42 U.S.C. § 12101(a)(2).  The ADA's legislative history states that "[i]ntegration is fundamental to the purposes of the ADA.  Provision of segregated accommodations and services relegate persons with disabilities to second-class citizen status."  H. Rep. 101-485(III), 101st Cong., 2d Sess, at 56, *reprinted in* 1990 U.S.C.C.A.N. 445, 479.  "'[T]he goal [is to] eradicat[e] the "invisibility of the handicapped."'  Separate-but-equal services do not accomplish this central goal and should be rejected." *Id.* at 50, 1990 U.S.C.C.A.N. at 473.  The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'"  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (quoting H.Rep. No. 101–485, pt. 2, p. 50 (1990), *reprinted in* 1991 U.S.C.C.A.N. 303, 332).

This integration mandate is found in two sections of the statute.  Title III makes it discriminatory to provide individuals with disabilities "with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary" to provide facilities, accommodations and the like that are as effective as those provided others.  42 U.S.C. § 12182(b)(1)(A)(iii).  It also requires that "[g]oods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual." *Id.*, § 12182(b)(1)(B).

Section 303 of the ADA required that all facilities designed and constructed after January 26, 1993 must be "readily accessible to and useable by" individuals with disabilities.  42 U.S.C. § 12183(a)(1).  The statute further instructed the DOJ to adopt implementing standards and regulations.  42 U.S.C. § 12186(b).  On July 26, 1991, the DOJ adopted the Americans with Disabilities Act Accessibility Guidelines as the 1991 Standards.  28 C.F.R. § 36.406(a) (1991).  The 1991 Standards are now published as Appendix D to title 28, part 36 of the Code of Federal Regulations.  On September 15, 2010, the DOJ amended its regulations and adopted the 2010 Standards. *See supra n. 1.*

Because the stores at issue in this case were constructed after January 26, 1993 but before September 15, 2010, they are required to comply with the 1991 Standards. 28 C.F.R. § 36.406(a)(1) (2012).  The only exception to this requirement is that, if the

2010 Standards "reduce the technical requirements or the number of required accessible elements below the number required by the 1991 Standards," the newer standards apply.  28 C.F.R. § 36.211(c) (2012).

    1. The 1991 Standards

   The 1991 Standards required that at least 50% of all public entrances be accessible and that, "[w]here feasible, accessible entrances shall be the entrances used by the majority of people visiting or working in the building."  *Id.* § 4.1.3(8)(a).  This Court has previously held that, by requiring individuals with disabilities to enter through the side entrances, the Raised Porch Entrances violated this provision and therefore Title III of the ADA.  *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 835 F. Supp. 2d 1098, 1107 (D. Colo. 2011) [ECF. No. 109].  The combination of the inaccessible Raised Porch Entrance and the side accessible entrances also violates sections 12182(b)(1)(A)(iii) and 12182(b)(1)(B), because it provides separate facilities and does not provide an integrated setting for people with disabilities.

    2. The 2010 Standards

   The 2010 Standards require that 60% of all public entrances be accessible.  *Id.* § 206.4.1.  This section -- unlike the 1991 Standards' section governing the percentage of entrances required to be accessible -- does not contain the "majority of the people" language.  Defendants argue that this therefore "reduce[s] the technical requirements" of the 1991 Standards so that, by operation of 28 C.F.R. § 36.211(c), Hollister stores

need only comply with the 2010 Standards.  Defendants further argue that they comply

with the 2010 Standards.  The Court will examine each of those arguments in turn.

a.      The 1991 and 2010 Standards Governing Entrances

While Defendants are correct that the "majority of the people" language from

section 4.1.3(8)(a) of the 1991 Standards is not present in the 2010 Standards, *see id.*

§ 206.4.1, that difference does not thereby "reduce the technical requirements" of the

1991 Standards governing entrances.  The DOJ commentary to section 206.4.1 states

that that section was designed to clarify the number of required accessible entrances,

and was "intended to achieve the same result as the 1991 Standards."  Analysis and

Commentary on the 2010 ADA Standards for Accessible Design, 28 C.F.R. pt. 36, app.

B at 824 (2012).  As the DOJ explained in its Statement of Interest:

> Defendants' argument [that their raised porches comply with the 2010
> Standards] is misplaced.  Many changes were made in the 2010
> Standards after a section by section review of the 1991 Standards.  The
> changes clarified and simplified the 2010 Standards as compared to the
> 1991 Standards.  One of the significant goals of the changes was to
> eliminate duplication or overlap in Federal accessibility guidelines, as well
> as to harmonize the 2010 Standards with model codes that are the basis
> of many State and local building codes.  See Nondiscrimination on the
> Basis of Disability by Public Accommodations and in Commercial
> Facilities, 75 Fed. Reg. 56,236, 56,245-46 (Sept. 15, 2010).
>
> The Department of Justice's interpretive guidance accompanying
> the 2010 Standards specifically states that the revision regarding
> accessible public entrances is intended to achieve the same result as the
> 1991 Standards.  Consequently, this Court's holding that the raised
> porches failed to comply with the 1991 Standards compels the conclusion
> that they also violate the 2010 Standards.

*Id.* at 2-3.  This guidance is entitled to deference because it represents the DOJ's authoritative interpretation of its own regulations.  As the Supreme Court has held, an agency's interpretation of its own regulation is controlling unless "plainly erroneous or inconsistent with the regulation."  *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citation omitted); *accord Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 880 (2011); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) ("We must give substantial deference to an agency's interpretation of its own regulations.").

The Raised Porch Entrances continue to violate the 2010 Standards governing entrances.[5]  This interpretation is not only consistent with the agency's interpretation of its own regulations, it is consistent with the fundamental purpose and explicit language of the ADA requiring integration and prohibiting separate-but-equal facilities.  *See* 42 U.S.C. §§ 12101(a)(2); 12182(b)(1)(A)(iii), (b)(1)(B).  "[A] regulation must be interpreted in such a way as to not conflict with the objective of its organic statute."  *Time Warner Entm't Co. v. Everest Midwest Licensee, LLC*, 381 F.3d 1039, 1050 (10th Cir. 2004).[6]

---

[5]    Because the 2010 Standards governing entrances do not "reduce the technical requirements or number of required accessible elements below the number required by the 1991 Standards," section 36.211(c) of the regulations does not apply, and there is no reason to consider the 2010 Standards in evaluating liability.  However, because any remedial work will have to comply with the currently-applicable 2010 Standards, I evaluate those Standards as well.

[6]    Defendants argue that this Court's references to the governing statute suggest that the Court is requiring a facility that complies with the Standards to meet a higher standard of nondiscrimination under the language of the statute.  Not so.  References to the statutory language demonstrate that this Court's (and the DOJ's) interpretation of the regulation is consistent with the language and purpose of the statute.  As the First Circuit stated, in interpreting and applying requirements of the 1991 Standards, "the statute as a whole remains highly relevant.  It provides the purpose and

Defendants also argue, with respect to both the 1991 and 2010 Standards, that the Raised Porch Entrances and the accessible entrances to each side constitute a single entrance.  Defendants further argue that the entrances -- construed as a single entrance -- comply with section 206.5.1 of the 2010 Standards, which requires that "[e]ach entrance to a building or facility required to comply with 206.4 shall have at least one [accessible] door."  While this might permit, say, a bank of nearly identical doors to contain only one accessible door, the language and purpose of the statute do not permit an interpretation that allows a door that is qualitatively different or superior to remain inaccessible while inferior side doors are the only accessible entrances.  Furthermore, as noted in this Court's order granting partial summary judgment, it is the position of the DOJ that, because the doors at Defendants' stores are on different elevations, the definition of "entrance" in section 3.5 of the 1991 Standards precludes them from being considered a single entrance.  *See* Order [ECF No. 109] at 8 n. 7; *see also* The United States of America's Statement of Interest on Plaintiffs' Motion for Partial Summary Judgment [ECF No. 97] at 7 n.9.  The definition of "entrance" in the 2010 Standards is materially identical to that of the 1991 Standards, *compare* 1991 Standards § 3.5 *with* 2010 Standards § 106.5.  The Court agrees with the DOJ's reasoning:  the Raised Porch Entrances and the accessible side entrances cannot be considered a single entrance.

---

general objectives that cast light on the meaning of the regulation at issue."  *United States v. Hoyts Cinemas Corp.*, 380 F.3d 558, 566 (1st Cir. 2004).

b.    The 2010 Standards Governing Accessible Spaces

As the DOJ points out, "where a space contains more than one use, 'each portion shall comply with the applicable requirements for that use.'"  DOJ Statement of Interest at 10 (quoting 2010 Standards, § 201.2).  Here, the Raised Porch Entrances must comply with the standards governing entrances, which, as explained above, they do not.  In addition, because each Raised Porch Entrance is also a space in the Hollister store that Defendants make available to individuals who do not require wheelchairs for mobility, they must comply with regulations governing circulation paths and accessible routes to accessible spaces.  Again, they fail to comply with these regulations.

The 2010 Standards require that -- unless covered by an exception -- if nondisabled customers can get to a space, customers who use wheelchairs have to be able to get to that space as well.  "At least one accessible route shall connect accessible building or facility entrances with all accessible spaces and elements within the building or facility which are otherwise connected by a circulation path," unless exempted by an applicable exception.  2010 Standards § 206.2.4.  A circulation path is defined as "way of passage provided for pedestrian travel, including . . . stairways, and landings."  *Id.* § 106.5.  Because the porches are connected to mall and store entrances by a circulation path -- the steps -- pursuant to section 206.2.4, they must be on an accessible route.  This is in keeping with the broad scoping requirement of the 2010 Standards, which mandates that "[a]ll areas of newly designed and newly constructed

buildings and facilities and altered portions of existing buildings and facilities shall comply with these requirements." *Id.* § 201.1.  The upshot of section 206.2.4 is that -- unless covered by an exception -- if you can walk to a space, you must be able to roll to it.

The exceptions to 206.2.4 are narrow and specific, including, for example, certain areas of detention facilities, residential facilities, transient lodging, and air traffic control towers, as well as areas of courtrooms, portions of assembly areas that do not include accessible seating, and mezzanines[7] in single-story buildings.  §§ 206.2.3, Exceptions 3-6; 206.2.4, Exceptions 1-3.  There is no exception for porches or raised areas of retail spaces.  Indeed, the Advisory to section 206.2.4 states, "[a]ccessible routes must connect all spaces and elements required to be accessible including, but not limited to, raised areas and speaker platforms."  And although the 2010 Standards specifically except certain "raised areas," this exception does not include a raised portion of a retail store.  *Id.* § 203.3 ("[a]reas raised primarily for purposes of security, life safety, or fire safety, including but not limited to, observation or lookout galleries, prison guard towers, fire towers, or life guard stands shall not be required to comply with these requirements or to be on an accessible route.")  Hollister's Raised Porch Entrances are not covered by any applicable exception and therefore, pursuant to section 206.2.4, must be on an accessible route.

---

[7]     The porches are not mezzanines.  By definition, "[m]ezzanines have sufficient elevation that space for human occupancy can be provided on the floor below."  2010 Standards § 106.5.  There is no space for human occupancy beneath the porches.

The DOJ's Statement of Interest summarizes the situation:

> [T]he raised porches at issue in this case function not only as entrances; they also are part of the public retail space of the store. As such, they are required to be accessible, under both the 1991 and 2010 Standards. Throughout this litigation, Defendants have emphasized the importance of the "in-store experience" for the Hollister brand.  Defendants have indicated that the unique Hollister store design -- including its raised porches, which are covered by a roof, feature a wooden floor, and include furniture and "props" such as lamps, plants, and oars -- is at the core of creating this experience. Because the raised porches including these special features and attributes are used as both public retail spaces and public entrances, they must meet the requirements under the ADA for both uses.

*Id.* [ECF No. 181] at 3.

Defendant argues that the Raised Porch Entrances "are designed to provide a *visual experience* to shoppers, and plaintiffs have not been deprived of that experience." [ECF No. 179] at 7-8 (emphasis in original).  This argument overlooks the reality that shoppers without mobility impairments may step up onto the Raised Porch Entrance, examine the displayed merchandise from all angles, sit in the chairs, and generally have the intended experience of entering a California beach shack by walking up onto the porch.  Because these uses of the space are denied to shoppers who use wheelchairs, the Raised Porch Entrances are in violation of section 206.2.4.[8]

* * *

---

[8]     The Raised Porch Entrances also violate the analogous provision of the 1991 Standards.  *See* § 4.1.3(1) (requiring that an accessible route "shall connect accessible building or facility entrances with all accessible spaces and elements within the building or facility."); *see also* Statement of Interest [ECF No. 181] at 11 n.9.

For the reasons set forth above, the Raised Porch Entrances at those Hollister stores that contain them violate both the 1991 and 2010 Standards.  Because all of the Hollister stores at issue were built after January 26, 1993, these stores thus violate the new construction provisions of Title III of the ADA, 42 U.S.C. § 12183(a)(1).

D.      Injunctive Relief

The only remedy for violation of Title III of the ADA is injunctive; the statute has no damages remedy for private plaintiffs.  *See* 42 U.S.C. § 12188(a).  Furthermore, because the Hollister stores with Raised Porch Entrances are in violation of section 12183(a), an injunction is mandatory to remedy the violation, which injunction "shall include an order to alter [the] facilities" to bring them into compliance.  *Id.* § 12188(a)(2); *see also, e.g., Moreno v. La Curacao*, 463 Fed. Appx. 669, 670 (9th Cir. 2011) ("The district court having determined that certain barriers at Defendant's establishment violated the ADA and that removal of these barriers was 'readily achievable,' *see* 42 U.S.C. § 12182(b)(2)(A)(iv),[9] Plaintiff was entitled to injunctive relief . . .").

Plaintiffs are not required to show irreparable harm to obtain an injunction for violation of section 12183(a), nor is a balance-of-harms test appropriate once such a violation is shown.  "'[W]hen the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown.'" *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 651 (10th Cir. 2004)

---

[9]      Section 12188(a)(2) mandates injunctive relief for violations of both sections 12183(a) (at issue here) and 12182(b)(2)(A)(iv) (at issue in *Moreno*).

(internal citations omitted).  "'[I]t is not the role of the courts to balance the equities between the parties [where] Congress has already balanced the equities and has determined that, as a matter of public policy, an injunction should issue where the defendant is engaged in . . . any activity which the statute prohibits.'"  *Id.* at 652 (citing *Burlington N. R.R. Co. v. Bair*, 957 F.2d 599, 601 (8th Cir. 1992)); *see also United States v. Morris*, 2011 WL 588060, at *5 (D. Colo. Jan. 14, 2011) ("[B]ecause [the statute] sets forth the criteria necessary for injunctive relief, the traditional equitable factors, including a showing of irreparable harm, need not be proved," citing *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981)).

At the January 24, 2013 hearing, I noted that while I concluded that Plaintiff's motion for summary judgment and request for entry of an injunction should be granted, the actual injunction will be issued in a future order of the Court.  Thus, for reasons stated on the record at the January 24, 2013 hearing, this Order will not impose the actual injunction as "I need for the parties to meet and confer, give me their input and if necessary [I] may need a hearing if there [are] disputes."  (Unofficial Bridge Tr. at 11:25:18-11:26:36).

IV.     <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Plaintiffs' Motion for Summary Judgment, Entry of Injunction, and Entry of Judgment, filed April 27, 2012 [ECF No. 162] is **GRANTED.**  Defendants'

Motion for Summary Judgment or, In the Alternative, To Vacate August 31, 2011 Order [ECF No. 164] is **DENIED.**  It is

      FURTHER ORDERED that the parties shall meet and confer before **March 15, 2013**, to attempt to craft an injunction/remedy that is mutually agreeable to both parties. If the parties can reach agreement on the contents of a proposed injunction, they shall jointly file the proposed injunction not later than **April 19, 2013.**  If the parties are not able to reach agreement, Plaintiffs shall file a proposed injunction and Defendants shall have 15 days to respond.

      Dated:  March 7, 2013

                        BY THE COURT:


                        s/ Wiley Y. Daniel_____
                        WILEY Y. DANIEL,
                        SENIOR UNITED STATES DISTRICT JUDGE