IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02757-WYD-KMT

COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit corporation;
ANITA HANSEN; and
JULIE FARRAR, individually and as class representatives,

      Plaintiffs,

v.

ABERCROMBIE & FITCH CO.;
ABERCROMBIE & FITCH STORES, INC.; and
J.M HOLLISTER LLC, d/b/a HOLLISTER CO.,

      Defendants.

---

ORDER

---

## I.     INTRODUCTION

This matter is before me on Plaintiffs' Motion for Attorneys' Fees and Costs (ECF

No. 231).  Plaintiffs move for their reasonable attorney fees and costs pursuant to the

Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12205.  On February 12, 2014, I

held a hearing on the motion.  Plaintiffs seek attorney fees in the amount of

$435,708.90 and costs in the amount of $20,342.51, representing amounts incurred

through August 31, 2013.[1]  For the reasons stated below, Plaintiffs' motion is granted in

---

[1] I note that at the February 12, 2014 hearing, without providing any advance notice or supporting documentation to the Court or the Defendants, Plaintiffs asserted that they had incurred additional attorney fees since August 13, 2103.  Accordingly, I ordered the parties to meet and confer regarding Plaintiffs' supplemental amount of attorney fees and submit a request to the Court not later than February 28, 2014.  On February 20, 2014, the parties submitted a joint statement to the Court indicating that they reached a stipulation that Plaintiffs are entitled to an additional $14,500 in supplemental attorney fees.  Based on this filing, I increase the total amount of fees awarded in this Order by $14,500 for attorney fees incurred by Plaintiffs after August 13, 2013.

part and denied in part.  Plaintiffs are awarded attorney fees and costs, but I reduce the amount of fees requested by Plaintiffs.

By way of background, I granted summary judgment to Plaintiffs finding that 231 Hollister clothing stores located throughout the United States violated the Americans With Disabilities Act ("ADA"), 42 U.S.C. 12181, *et seq.*[2]  On August 20, 2013, I entered a permanent injunction requiring Defendants to remove, ramp, or close off all of the elevated entry doors by January 1, 2017, at a rate of at least 77 stores each year beginning on January 1, 2014.  (ECF No. 211).

II.     ATTORNEY FEES

A.     Standard of Review

The ADA gives courts discretion to award attorney fees, including costs and litigation expenses, to a prevailing party.  *See* 42 U.S.C.A. § 12205.  The ADA, like other civil rights statutes, favors granting attorney fees to a prevailing party as a means to encourage attorneys to police unlawful conduct.  The Supreme Court reiterated this policy in *Christiansburg Garment Co. v. EEOC*, 98 S.Ct. 694 (1978) when it stated that "the plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority,'"  *Id.* An award of attorney fees to a prevailing party is also an award of fees "against a violator of federal law."  *Id.*

Here, it is undisputed that Plaintiffs are the prevailing party and entitled to both attorney fees and costs.  Thus, I first turn to the issue of whether the requested fees are reasonable.

_____

[2] In numerous prior written orders, I set forth detailed recitations of the facts of this case along with my reasoning and findings.  Those orders are incorporated by reference herein.

B.      Reasonableness

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.*  In other words, "[t]o determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quotations omitted).  "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Id.* (quotation omitted).  "A district court should approach this reasonableness inquiry 'much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients.'" *Id.* (quoting *Ramos v. Lamm*, 713 F.2d 545, 555 (10th Cir. 1983)).

In determining the reasonableness of the hours expended, a court considers several factors, including: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to specific task. *See Ramos*, 713 F.2d at 553-54.

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433.  The Tenth Circuit has

noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998). "A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." *Id.*; *see also Robinson*, 160 F.3d at 1281 ("a district court may discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks'") (quotation omitted).

Once the court has adequate time records before it, "it must then ensure that the winning attorneys have exercised 'billing judgment.'" *Case*, 157 F.3d at 1250 (quoting *Ramos,* 713 F.2d at 553). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id.* (citing *Ramos*, 713 F.2d at 553-54) (giving as an example time spent doing background research); *Hensley*, 461 U.S. at 434, 437 (expecting counsel to exercise their "billing judgment", "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"). In other words, the district court should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (quotation omitted).

"After examining the specific tasks and whether they are properly chargeable, the district court should look at the hours expended on each task to determine if they are reasonable." *Id.* "The *Ramos* court suggested that among the factors to be considered were (1) whether the tasks being billed 'would normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses necessitated by the maneuvering of the other side,' and (6) 'potential duplication of services' by multiple lawyers. *Robinson*, 160 F.3d at 1281 (quoting *Ramos*, 761 F.2d at 554). "In this analysis, [the court should] ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Id.*

### 1.    Reasonable Hourly Rate

Turning to my analysis, I first consider the reasonableness of the hourly rates charged by Plaintiffs' counsel who worked on this case. As to the hourly rate, the Tenth Circuit indicates that "the court must look to 'what the evidence shows the market commands for civil rights or analogous litigation.'" *Burch v. La Petite Academy, Inc.*, 2001 WL 589461 at *2 (quoting *Case*, 157 F.3d at 1243). The "local market rate" is usually the state or city in which counsel practices. *Ellis v. Univ. of Kansas Medical Center*, 163 F.3d 1186, 1203 (10th Cir. 1998) (looking at "the prevailing market rates in the relevant community"); *Case*, 157 F.3d at 1256 (looking at fees charged by lawyers in the area in which the litigation occurs). The court is also entitled to consider the quality of counsel's performance in setting the fee. *Ellis*, 163 F.3d at 1203.

Here, Defendants do not dispute the reasonableness of the rates charged by Plaintiffs' counsel which range from $220-$440 per hour. Because Plaintiffs provided

ample evidence that $220-$440 per hour is a reasonable rate in the Denver area for

attorneys of similar background and experience as Plaintiffs' counsel, I find the hourly

rates requested to be reasonable.

### 2.     Reasonable Number of Hours

Plaintiffs' counsel assert that they spent a total of 1,455.45 hours working on this

case. (ECF No. 231 at 7).  Defendants contend that these hours should be reduced for

duplicative, excessive, vague, and unnecessary billing.  D.C.COLO.L.Civ.R 54.3.B.1

requires the Plaintiffs to include "a detailed description of the services rendered . . . for

each person for whom fees are claimed."  *See Hensley*, 461 U.S. at 433 (stating that

the party seeking an award of fees should submit evidence supporting the hours worked

and rates claimed.  Where the documentation of hours is inadequate, the district court

may reduce the award accordingly).

District courts are "to give particular attention to the possibility of duplication"

when multiple attorneys represent the same party, including when those attorneys are

"in conferences with each other."  *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, Case No.

02-CV-01533-WYD-BNB, 2009 WL 1973501, at *7-8 (D. Colo. July 6, 2009) (citing *New*

*Mexico Citizens for Clean Air and Water v. Espanola*, 72 F.3d 830, 835 (10th Cir.

1996)).

For reasons stated on the record at the February 12, 2014 hearing and in this

Order, I do find merit in Defendants' argument that the fee request should be reduced

due to excessive, vague, duplicative, and unnecessary billing entries.  Though not

required to do so, I conducted a painstaking review of Plaintiffs' counsel's 235-page

billing statement.  *See Am. Water Dev.*, 874 P.2d 352, 387 (Colo. 1994) (recognizing

that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application and endorsing percentage cuts as a practical mans of trimming fat from a fee application).  For example, Plaintiffs submitted their billing statement with general descriptions such as, "Reviewing work in progress" or "Discussing case status".  These types of vague and duplicative entries occur from June of 2011 until August 2013 and account for approximately 56 billing entries for general and non-substantive conferences with one another.  (*See* Plaintiffs' Ex. 1 at 76-241).  The billing records also include pages of entries where the attorneys reviewed each others' work and email correspondence.  While I recognize that some collaboration may have been necessary, I find that the number of billing entries for this type of activity to be excessive.  (*See* Plaintiffs' Ex. 1 at 35-228).

Furthermore, in considering the *Ramos* factors, I find that some of the tasks billed by Plaintiffs' counsel would not normally be billed to a paying client.  While Plaintiffs characterized this action as a complex case, I tend to agree with Defendants that this case was more straightforward because it was resolved after two motions for summary judgment with minimal discovery and never moved close enough to a trial date to justify significant trial preparation.

Accordingly, based on my judicial experience and careful consideration of the evidence and governing law, I find that Plaintiffs' claimed number of hours expended are unreasonable and excessive due to both vagueness and duplication.  For reasons stated on the record at the February 12, 2014 hearing and based on the above noted billing inadequacies, I find that a general reduction of hours is appropriate.  *See DeGrado*, 2009 WL 1973501, at *10; *Carr v. Fort Morgan School Dist.*, 4 F. Supp. 2d

998, 1003 (D. Colo. 1998) (determining that an across-the-board 15% reduction of requested attorney fees is appropriate).  Indeed, the Plaintiffs conceded that this approach was appropriate at the hearing and suggested a 15% reduction.[3]  Thus, I find that a reduction of 15% of the requested fees is appropriate.  This results in a reduction of fees from $435,708.90 to $370,352.57.

III.    COSTS

Plaintiffs also request $20,342.51 in recoverable costs or litigation expenses pursuant to the ADA, 42 U.S.C. § 12205.  Under the ADA, in addition to attorney fees, courts are authorized to award litigation expenses and costs to a prevailing party.  *See* 42 U.S.C. § 12205.  Specifically, litigation expenses chargeable under the ADA include expert witness fees.  *See Hall v. Claussen*, 6 Fed, Appx. 665, 682 (10th Cir. 2001) (holding that the ADA provides the express statutory authorization necessary to award costs for expert witness fees); *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) (noting that the preamble to the ADA regulations explains that litigation expenses include items such as expert witness fees and travel expenses).  Here, the majority of Plaintiffs' requested costs in this matter is attributable to expert fees, which I find to be reasonable and necessary litigation expenses.  Based on my careful review and for the reasons stated on the record at the February 12, 2014 hearing, I find all of the expenses for which Plaintiffs' counsel seeks reimbursement to be those that would normally be billed to a private client.  *See Ramos*, 713 F.2d at 559.  Accordingly, I award Plaintiffs $20,342.51 in recoverable costs pursuant to the ADA, 42 U.S.C.

---

[3] Defendants also agreed with the approach and suggested a 25% reduction.

§ 12205.

IV.    CONCLUSION

Based on the foregoing and for reasons stated on the record at the February 12,

2014 hearing, it is

ORDERED that Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 231) is

**GRANTED IN PART AND DENIED IN PART**.   Pursuant to the ADA, 42 U.S.C.

§ 12205, Plaintiffs are awarded attorney fees in the amount of $370,352.57 and costs in

the amount of $20,342.51.  It is

FURTHER ORDERED that based on the parties' Joint Statement Re: Additional

Attorneys' Fees for the Period August 31, 2013 to Present (ECF No. 244), I add

$14,500 to the amount ordered above, for a total award of $384,852.57 in attorney fees

and costs in the amount of $20,342.51.

Dated:  February 26, 2014

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge