IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior District Judge Wiley Y. Daniel**

Civil Action No.   09-cv-02757-WYD-KMT

COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit corporation;
ANITA HANSEN; and
JULIE FARRAR, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

ABERCROMBIE & FITCH CO., *et al.*,

    Defendants.

---

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT
AND AWARDING ATTORNEYS' FEES**

---

This matter is before me on Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement Agreement and Award of Attorneys' Fees.  For the reasons stated during the hearing on September 24, 2015 and set forth below, the motion is GRANTED.

**I.    BACKGROUND**

Plaintiffs -- individuals who use wheelchairs for mobility and the Colorado Cross-Disability Coalition ("CCDC") -- filed suit against the Defendants, the owners and operators of Hollister stores, alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*

During times relevant to this litigation, Defendants owned and/or operated approximately 500 Hollister stores nationwide. Approximately half of those stores had an entrance at the front of the store that had two steps and a platform. Members of Plaintiff CCDC (a statewide disability advocacy organization), including Anita Hansen and Julie Farrar, alleged that this entrance violated the ADA for a number of reasons. Before filing suit, however, the parties spent many months attempting to resolve the differences. These discussions were amicable but ultimately unsuccessful, and Plaintiffs filed suit in December 2009.

The original lawsuit raised essentially three issues: (1) plaintiffs claimed that the entrances with steps violated the ADA; (2) service counters inside the stores did not have a lower portion that was accessible to patrons who use wheelchairs, which Plaintiffs also alleged violated the ADA; and (3) plaintiffs claimed that interior circulation routes throughout the store prevented access to much of the merchandise for customers who use wheelchairs.   Before the lawsuit was filed, and in the early stages of the lawsuit, Defendants installed additional side entrances in their stores nationwide that did not have steps, lowered portions of their service counters, and devised a plan for increasing interior circulation space for customers who use wheelchairs.   Defendants represent that they are using this plan in all the stores.

Numerous motions were filed and opposed in this case, including, without limitation, the following:

- Defendants' Motion to Dismiss, ECF 35;
- Plaintiffs' Motions to Amend Complaint, ECF 18, 24, 70, 123;

-3-

- Defendants' Renewed Motion to Dismiss, ECF 76;
- Plaintiffs' Motion for Partial Summary Judgment, ECF 87;
- Plaintiffs' Motion to Certify Class, ECF 125;
- Plaintiffs' Motion for Summary Judgment, Final Judgment and for Issuance of Injunction, ECF 162;
- Defendants' Motion for Summary Judgment or, in the Alternative, to Vacate August 31, 2011 Order, ECF 164;
- Plaintiffs' Proposed Permanent Injunction, ECF 203;
- Plaintiffs' Motion for Attorneys' Fees and Costs, ECF 231.

In addition to these motions, several discovery motions were filed as well. *See, e.g.,* ECF 55 & 126.

On March 16, 2011, Plaintiffs amended their complaint to narrow the case to the single issue of whether the raised porch entrances at Hollister stores violated the ADA. ECF 87. The parties ultimately filed cross-motions for summary judgment. *See* ECF 164. Twice, the United States Department of Justice submitted Statements of Interest in support of Plaintiffs' positions on issues in the case. ECF 97 & 181.

The Court granted Plaintiffs' Motion for Class Certification, ECF 161, ruled against Defendants on their Motion to Dismiss, ECF 98, granted Plaintiffs' Motion for Partial Summary Judgment, ECF 109, and granted Plaintiffs' request for a nationwide permanent injunction, ECF 211. The Court also granted Plaintiffs' Motion for Attorneys' Fees and Costs. ECF 245.

Defendants appealed to the Tenth Circuit Court of Appeals, Case No. 13-1377. In its ruling, the majority of the panel held in Plaintiffs' favor on questions relating to class certification and standing but ultimately held that Hollister's elevated entrances did not violate the ADA. *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205 (10th Cir. 2014).

Since that time, Defendants have been making changes to the storefronts of their Hollister stores as explained below.

## II.     SUMMARY OF THE SETTLEMENT

The Settlement Agreement addresses and provides relief with respect to Hollister stores with elevated entrances and the claims in this lawsuit in the following ways, subject to Court approval:

- As of February 2, 2014, Defendants represent they operated approximately 218 Hollister stores nationwide with elevated entrances. Settlement Agreement ¶ 2.1.

- Defendants represent that prior to the effective date of the Settlement Agreement, they converted 31 Hollister stores that had elevated entrances to a new design without an elevated entrance and closed 14 Hollister stores that had elevated entrances. *Id.* ¶ 4.1. Defendants converted the Park Meadows Mall store in Colorado, which had an elevated entrance, during the time of this litigation. Decl. of Amy F. Robertson, ECF 254-1 ("Robertson Decl."), ¶ 12(b).

-5-

- Going forward, Defendants will either close to the public or convert to a new entrance design 47 additional Hollister stores that currently have elevated entrances.  Settlement Agreement ¶ 4.2.  Thus, out of the original approximately 250 stores with elevated entrances, following full implementation of the proposed settlement, only at most 126 stores will have such entrances.  *Id.*
- Defendants will not design and construct elevated entrances and will ensure all entrances to Hollister stores after the settlement are designed and constructed without elevated entrances.  *Id.* ¶ 4.3.
- Defendants will provide Plaintiffs' counsel with the store name and location of each Hollister post-settlement store in writing.  *Id.* ¶ 4.4.

In the Settlement Agreement, the parties agreed to seek this Court's approval for settlement on a class action basis.  On April 20, 2012, this Court certified the following class:

> All people with disabilities who use wheelchairs for mobility who, during the two years prior to the filing of the Complaint in this case, were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any Hollister Co. Store in the United States on the basis of disability because of the presence of an Elevated Entrance ("Class Parties").

ECF 161 at 2, 13-14.

Finally, with respect to attorneys' fees and costs, Defendants have agreed to pay $190,000.00 to resolve the claims of the class for attorneys' fees and costs.  *Id.* ¶ 4.5.

### III. SETTLEMENT AGREEMENT

#### A. The Notice Provided Satisfied Rule 23(e) and Due Process.

Plaintiffs provided notice as ordered by the Court. Specifically, Plaintiffs mailed and emailed the notice to a number of disability rights organizations around the country, requesting that they post it widely. Plaintiff CCDC posted the notice on its website and distributed it through its email alert system. *See generally* Decl. of Lauren Haefliger, ECF 260-1. For the reasons set forth in Plaintiffs' Motion for Preliminary Approval, ECF 254 at 13-15, and approved by this Court, ECF 259, and based on the facts set forth in Ms. Haefliger's declaration, the Court holds that the notice provided satisfied Federal Rule of Civil Procedure 23(e) and Due Process.

#### B. The Settlement Agreement is Fair, Reasonable, and Adequate.

"The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. May 19, 2014) (citing *Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1186 (10th Cir. 2002)). "The Court reviews a proposed class action settlement by considering four factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993)).

### i.     The Settlement Agreement Was Fairly and Honestly Negotiated.

The settlement negotiations have been fair, honest, and at arm's length.   There are numerous examples of this.

First, the parties have "vigorously advocated their respective positions throughout the pendency of the case."   *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (quoting *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997)).   This case has been litigated over the course of over six years, during which time the parties engaged in extensive motions practice and an appeal.

In addition, the settlement is the result of a long process of arm's-length negotiations.   As Defendants have represented, initial negotiations led to significant changes, albeit without a written agreement.   *See, e.g.*, ECF 167 at ii-iii.   The parties corresponded and met from time to time throughout the litigation in an attempt to achieve a resolution.   Specifically, the parties met in person on two occasions in 2013, the second with the assistance of Judge Steve Briggs of the Judicial Arbiter Group.   They exchanged numerous emails and phone calls but were unable to resolve the litigation before the appeal.   Following the appeal and denial of rehearing, the parties began a process of telephone meetings and exchanges of drafts that led to the current proposed settlement agreement.   Decl. of Amy F. Robertson, ECF 254-1, ¶¶ 15-17.

Because the settlement resulted from arm's-length negotiations between experienced counsel after both parties conducted discovery, after a significant number of motions were brought and contested, and after extensive prior settlement discussions failed, the settlement should be presumed to be fair and adequate.   *Lucas*, 234 F.R.D. at

693 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (holding that a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting Manual for Complex Litigation (Third) § 30.42 (1995))). The settlement in this case eliminates many of the alleged barriers to access about which Plaintiffs complained.

      **ii.**    **Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt.**

Although it is not appropriate at this stage of the litigation to evaluate the merits, *Wilkerson*, 171 F.R.D. at 284 (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981), Defendants prevailed on the core issue in this case on appeal to the Tenth Circuit. Although Plaintiffs could have sought *certiorari* or litigated further regarding the accessibility of the side entrances, they determined that it was in the best interests of the class to secure the above-described settlement terms. The changes that Defendants have made in response to and throughout the course of the litigation and that they will make pursuant to the settlement agreement are substantial, especially in light of the legal status of case.

      **iii.**   **The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.**

Following settlement, over half of the Hollister stores that, at the beginning of the litigation, had steps will either be closed or will have the steps removed. This will happen before the end of 2016. Had the parties continued litigating to the United States Supreme Court, or tried the case before this Court on the question of accessibility of the

693 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (holding that a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting Manual for Complex Litigation (Third) § 30.42 (1995)))). The settlement in this case eliminates many of the alleged barriers to access about which Plaintiffs complained.

    **ii.**    **Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt.**

Although it is not appropriate at this stage of the litigation to evaluate the merits, *Wilkerson*, 171 F.R.D. at 284 (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981), Defendants prevailed on the core issue in this case on appeal to the Tenth Circuit. Although Plaintiffs could have sought *certiorari* or litigated further regarding the accessibility of the side entrances, they determined that it was in the best interests of the class to secure the above-described settlement terms. The changes that Defendants have made in response to and throughout the course of the litigation and that they will make pursuant to the settlement agreement are substantial, especially in light of the legal status of case.

    **iii.**   **The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.**

Following settlement, over half of the Hollister stores that, at the beginning of the litigation, had steps will either be closed or will have the steps removed. This will happen before the end of 2016. Had the parties continued litigating to the United States Supreme Court, or tried the case before this Court on the question of accessibility of the

side entrances, it could have taken significantly longer before the case would be resolved. The stores to be remedied are distributed evenly around the country, and thus do not unduly prejudice one part of the class over another. The proposed settlement represents a reasonable compromise between Defendants' position that the Tenth Circuit's decision endorsed Hollister's entrance configuration, and Plaintiffs' position that a trial would demonstrate a pattern and practice of barriers making the side entrances non-compliant. Robertson Decl. ¶ 20.

### iv. In The Judgment of the Parties, the Settlement Is Fair and Reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (quoting *Marcus v. Kansas Dep't. of Revenue*, 209 F.Supp.2d 1179, 1183 (D. Kan. 2002)). Here, the parties' counsel -- among whom are attorneys with substantial experience in complex litigation and disability class actions -- recommend this settlement as fair, adequate and reasonable. *See* Robertson Decl. ¶¶ 3, 20.

\* \* \*

For the reasons set forth above, the Court finds that the settlement satisfies the four-part test in *Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d at 1186, and thus APPROVES the agreement.

## IV. ATTORNEYS' FEES

The Settlement Agreement provides that Defendants will pay $190,000 in attorneys' fees and costs to counsel for the class. This Court previously has previously reviewed Plaintiffs' fee petition prior to the appeal. At that time, the Court ruled that

Plaintiffs' work merited an award of attorneys' fees and costs, approved Plaintiffs' counsel's rates, and awarded $370,352.57 for fees and $20,342.51 in costs.  *See generally* ECF 245. Although, on appeal, the Tenth Circuit reversed this Court on the merits, Plaintiffs now have reached a settlement with Defendants and achieved substantial results for the class.   For example, Defendants represent that, as a result of this lawsuit, they have taken or will take the following actions:

- Closing or altering at least 92 Hollister stores to remove the steps and replace them with a level entrance;
- Lowering the height of primary sales counters;
- Adding a second automatic push button on the side entrances;
- Changing store procedures to attempt to ensure doors are unlocked during business hours and not blocked by merchandise;
- Re-merchandising to attempt to ensure a 36-inch path of travel (with occasional 32-inch pinch points for distances of less than 24 inches).

*See generally* Ex. 1; ECF 167.

Accordingly, Plaintiffs' request for $190,000 in fees and costs -- slightly more than half the amount approved by the Court prior to the appeal -- is reasonable and appropriate.   For the reasons set forth above and in ECF 245, this Court **AWARDS** Plaintiffs' counsel the amount of $190,000 for their reasonable fees and costs.

SO ORDERED

-11-

Dated: September 29, 2015

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge